Reddington *vs.* Lanahan, *et al.*

(Decided 16th February, 1883.)

PATRICK REDDINGTON *vs.* THOMAS M. LANAHAN, JOHN HAUGH and others.

*Question as to the Existence of a Partnership—Liability for the legal consequences of an Agreement—Merger of antecedent Negotiations in a Written Contract—Facts alleged, and not Conclusions of law, admitted by a Demurrer—Conclusion of law— Construction of Agreement—Decree in personam— Trust—Fraud—Allegations not pertinent to the case made by the Bill—Bill for discovery not maintainable.*

A contract was made between E. and the Mayor and City Council of Baltimore, for the performance by E. of certain work for said corporation. The contract provided for the retention by the city of one-fifth of the money due upon the monthly estimates, until the work was completed and accepted. Subsequently a written agreement was made between E. and R. by which R. was to super-intend the work, and to receive therefor from E. one-sixth of the *net profits* arising from the contract with the city. It was further stipulated by this agreement that R. should have the privilege of drawing a fixed sum per month, to be charged against said one-sixth net profits, and should have the privilege of inspecting the books of account relating to the work; but in the concluding clause it was expressly agreed that R. *was not a partner* with E. in said work, nor was he to be in any manner liable for any damages growing out of its prosecution, other than as such superintendent. A bill was filed by R. against E. and certain assignees of E's interest in the contract with the City of Baltimore, and against

Reddington *vs.* Lanahan, *et al.*

the said city, for a discovery, and account, and a decree for the amount due him, and for a receiver to receive all sums payable by the city under its contract, and an injunction to prevent E. or his assignees from collecting, and the said city from paying to them, the sums due under said contract. On demurrer to said bill, it was Held:

That in the face of the provision in the agreement between E. and R. that R. should not be a partner, it could not be said that the other clauses of the agreement, by which it was stipulated that he should receive one-sixth of the net profits growing out of the contract, as compensation for his management and superintendence of the work, made him such partner.

The bill alleged certain verbal negotiations antecedent to the written agreement, and that complainant when the agreement was presented to him by E. objected to the clause which apparently denied their partnership, but finding all his protests unavailing, he finally signed the agreement as prepared, under the belief that the clause in question would not affect his rights in the premises. Held:

1st. That as he signed the agreement with knowledge of its provisions, and did not by his bill seek to set it aside, or reform it, but stood upon it, and insisted that under it he was a partner, and made it part at least of the foundation of the relief prayed for, he must accept all the legal consequences flowing from this position; one of which was that by the express terms of the agreement he was not a partner; and another was, that all antecedent verbal negotiations or agreements were merged in the written contract, which stood and expressed the final and actual agreement of the parties.

2nd. That although the case was presented upon demurrer to the bill, it was the facts alleged, not the conclusions of law sought to be drawn from them, which the demurrer admitted.

3rd. That in a case like this, the averment that a partnership existed, founded upon antecedent verbal negotiations, was a conclusion of law; the final written agreement stood in the way and compelled the Court to reject all such averments.

4th. That the written agreement was a complete answer to all of the averments of the bill, so far as they assert that a partnership was intended or created by previous dealings between the parties.

5th. That the complainant, not being a partner, was by the agreement, simply employed by E. to manage and superintend the work for a compensation to be measured by one-sixth of the net profits,

but having no lien upon the partnership effects, and having no more right than any other simple contract creditor to interfere with any disposition E. might choose to make of them.

6th. That assuming that by virtue of this contractual relation, R. had a right to go into equity and call upon E. for an account, in order to ascertain the amount due, as provided in the contract, and that a Court of equity, having jurisdiction for that purpose, would go on and decree payment of the amount thus ascertained, such decree would simply be a decree *in personam*, having no more effect upon the moneys payable to him for work done under his contract with the city, than upon any other property belonging to E.

7th. That the averments of the bill did not disclose any facts upon which it could be held that this money was impressed with any trust in favor of the complainant, so that he could seize upon it in the hands of E., or follow it into the hands of his assignees, taking with actual knowledge of all the claims and pretensions set up by the complainant.

8th. That assuming then that the assignees when they took the assignments from E. had notice of all the facts alleged in the bill, still the complainant was not entitled as against them to the relief which the bill prayed for.

9th. That the allegations of the bill, if any there were, which might be regarded as charging fraud against the assignees or either of them, were not pertinent to the case made by the bill, it not being a creditors' bill assailing the assignments upon the ground that they were executed in fraud of the creditors of E.

10th. That as the complainant was not entitled under the bill to any relief against the assignees, it could not be maintained against them as a bill for discovery.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Arthur W. Machen*, for the appellant.

*Bernard Carter,* for Thomas M. Lanahan, and John Haugh.

MILLER, J., delivered the opinion of the Court.

On the 15th of November, 1875, a contract was made between Eschbach and the Water Board of Baltimore City, on behalf of the Mayor and City Council, by which Eschbach contracted to construct the reservoir of the permanent supply of water for the city from the Gunpowder river, and to complete the same on or before the 1st of January, 1879. This contract contains the usual stipulations embodied in contracts for public works of this character, including the right on the part of the city to retain one-fifth of the money due upon the monthly estimates until the work was completed and accepted. Afterwards, on the 14th of December, of the same year, a written agreement was entered into between Reddington and Eschbach by which Reddington agreed to manage and superintend the construction of this work, and to receive therefor from Eschbach one-sixth of the *net profits* arising from the contract with the city, and Eschbach agreed to pay him as compensation for such management and superintendence, one-sixth of such *net profits.* It was further stipulated by this agreement that Reddington should have the privilege of drawing from Eschbach $75 per month during the prosecution of the work, and that the sums so paid him should be charged against the said one-sixth net profits, and that Reddington should also have the privilege, at all times during the continuance of the agreement, to inspect the books of account relating to the prosecution of the work; but in the concluding clause it is expressly agreed that Reddington *is not a partner* with Eschbach in the construction of the work, nor is he to be in anywise liable for any damages growing out of the prosecution of the work other than as such manager and superintendent.

The work was begun and Reddington continued to act as manager and superintendent until the 15th of July, 1878, when he was discharged by Eschbach, and shortly thereafter he filed his original bill in this case against Eschbach and the Mayor and City Council of. Baltimore. Upon the averments made in that bill he prayed that Eschbach might be required to make discovery of all the moneys he had received from the city, how the same had been disbursed, and that an account might be taken under the Court's direction so as to ascertain the profits hitherto made, and that he be decreed to pay to the complainant immediately one-sixth part of such net profits in accordance with the agreement of the 14th of December, 1875, and in default of such payment that the same be secured to him out of the moneys hereafter payable by the city under the construction contract, and that a receiver be appointed to receive payment of all such moneys from the city. He also prays that in addition to the one-sixth so stipulated to be paid him by the agreement of December, 1875, payment may be decreed to him of an additional one-sixth, so that he may receive the full one-third of all the profits, to which he was justly and equitably entitled, and would have received but for the fraud practiced upon him by Eschbach in the premises, and for an injunction restraining him from collecting or receiving any further payments from the city, and also restraining the Mayor and City Council from paying to him any part of the one-fifth of the amounts appearing to be due to Eschbach by the monthly estimates, and which one-fifth is provided by the construction contract to be reserved until the work is completed.

Eschbach answered this bill on the 11th of September, 1878, and nothing further was done in the case until the 6th of March, 1880, when Reddington filed an amended and supplemental bill, by which Lanahan and Haugh were brought in as parties with the original defendants.

It appears that as early as the 27th of January, 1877, Eschbach, for the consideration of the sum of $46,000 and other good and valuable considerations, had assigned to Lanahan all the money, ($27,764.36,) which *then* stood to his credit on the books of the Water Board, as the one-fifth retained under the clause of the construction contract, authorizing such retention, and all other like sums to be *thereafter* retained under the same clause. The instrument by which this assignment was effected was placed on record the same day it was executed, and by it Eschbach also constituted Lanahan his attorney irrevocable, with power to receive and execute releases for the money thus assigned, and also to collect and receive all the cash payments which may from time to time be coming to him under the monthly estimates of the engineer. On the 8th of May, 1877, Eschbach executed another instrument, by which he assigned to Lanahan all the moneys then payable to him under the contract, and also all his personal property. Afterwards, on the 17th of January, 1880, Lanahan, at the request of Eschbach, and in order to enable the latter to assign the contract itself to Haugh, released from the operation of the assignment of the 27th of January, 1877, such part of the one-fifth reservation as should *thereafter* be retained, and agreed that the same should be paid to Haugh, upon his fulfilling and completing the contract, but reserving to Lanahan his right to the sum *already* retained, amounting to about $25,000; and by the same instrument Lanahan conveyed and assigned to Haugh all the property, claims, and rights vested in him by the instrument of the 8th of May, 1877. Both these instruments were also placed upon record. The contract was then assigned to Haugh, who proceeded to complete the work thereunder, in place of Eschbach.

In the amended and supplemental bill, the averments of the original bill are repeated, and it is charged that

Lanahan and Haugh had knowledge of the complainant's rights and interest in the money received and to be received from the city under this contract, and in the contract itself, at the time the several assignments to them were made; and substantially the same discovery and relief is prayed from and against them as were, by the original bill, sought from and against Eschbach To this bill separate demurrers were filed by Lanahan, Haugh, and the Mayor and City Council. The Court sustained these demurrers, and ordered the bill to be dismissed as to these defendants. From this order the complainant has appealed, and the question presented is, does the bill make a case entitling him to any relief in equity against these parties?

The object of the bill undoubtedly is to reach and subject the money payable by the city under this construction contract, to the payment of the claim set up by Reddington, the complainant. In order to authorize a Court of equity to do this, it must appear either that he was a partner with Eschbach, and as such entitled to share in the profits arising from the execution of the contract, or that the money retained by the city under the reservation clause in the contract, was in some other way impressed with a trust in his favor. But by the terms of the agreement between them of the 14th of December, 1875, both parties expressly agreed that Reddington should *not be a partner* with Eschbach, in the construction of the work, and in the face of this provision, it cannot be said that the other clauses of the agreement by which it was stipulated, that he should receive one-sixth of the net profits growing out of the contract, as compensation for his management and superintendence of the work, made him such partner. The very purpose of the concluding clause, was to prevent the preceding clauses from creating a partnership between them. If reference to decisions upon this point be needed, the case in this Court of *Kerr vs. Potter,*

6 *Gill,* 404, is not only a sufficient, but a binding authority. In that case a similar clause in a similar agreement, declaring that Potter was not thereby made a partner with Kerr, but that the allowance to him of one-fourth of the net profits of the business, is a compensation for his services in lieu of clerk hire, was held conclusive of the question. It was also further decided in that case, that as the parties were not partners *inter se,* Potter had no more right to ask a Court of equity, *on the ground of lien,* to restrain Kerr from selling or disposing of the business property and assets, than any other creditor of Kerr would have; and in the subsequent case of *Glenn vs. Gill,* ·2 *Md.,* 1, it was held that such property and effects passed to Kerr's trustee in insolvency.

But the bill contains averments to the effect that by certain previous verbal negotiations and agreements between them, it was understood that complainant should be interested as a partner in the contract to the extent of one-third, but afterwards Eschbach, representing that he was able to supply all the cash capital for the work, insisted that if complainant and Young, (who was also proposed to be taken in as a partner,) did not each furnish one-third of the capital their shares in the expected profits should be reduced to one-sixth, and to this exaction, complainant was reluctantly compelled . to yield ; that thereupon, the written agreement was prepared under the direction of· Eschbach, and when it was produced he objected to the clause which apparently denied their partnership, but Eschbach represented that it was intended for the protection of complainant in case the enterprise should prove unfortunate, and give rise to the claims of creditors ; that he did not admit the sufficiency of this pretext, but finding all his protests unavailing, and that Eschbach by being allowed to stand as sole contractor, had an advantage of position which he could not contend against, without unprofitable litigation, delay and expense, he finally signed

the agreement as prepared, under the belief that the clause in question would not affect his rights in the premises.

Now, whatever else may be said of these averments, they contain a plain admission that his attention was called to the objectionable clause, and that he signed the agreement with full knowledge of all its provisions. Moreover, he does not by his bill seek to set it aside upon the ground of fraud, or to reform it upon the ground of mistake. On the contrary, the whole bill proceeds upon the theory of its validity. He stands upon it, insists that under it he is a partner, and makes it part, at least, of the foundation for the relief prayed for. Taking this position, and thus admitting the validity of this agreement he must accept all the legal consequences flowing therefrom. One of them, as we have shown, is that by the express terms of that agreement he is not a partner. Another is that all antecedent verbal negotiations or agreements, are merged in the written contract which stands and expresses the final and actual agreement of the parties. It is plain that parol evidence of preliminary negotiations and dealings can never be admitted to prove terms of contract, the exact opposite of those set out in the subsequent written instrument. But it is said, this case is presented upon demurrers to the bill. That is true, but it is the facts alleged, not the conclusions of law sought to be drawn from them, which the demurrers admit. In a case like this, the averment that a partnership existed, founded upon antecedent verbal negotiations, is a conclusion of law, not admitted by the demurrers. The final written agreement stands in the way and compels us to reject all such averments. We have carefully examined all the allegations, both of the original and amended bills, and find that the written agreement is a complete answer to all of them, so far as they assert that a partnership was intended or created by previous dealings between these parties. We see no escape from this conclusion.

The complainant then, not being a partner, was by this agreement simply employed by Eschbach to manage and superintend the works for a compensation to be measured by one-sixth of the net profits, but having no lien upon the partnership effects, and having no more right, than any other simple contract creditor, to interfere with any disposition Eschbach might choose to make of them. We may assume that, by virtue of this contractual relation, he would have the right to go into equity and call upon Eschbach for an account, in order to ascertain the amount due as provided in the contract, and that a Court of equity, having jurisdiction for that purpose, would go on and decree payment of the amount thus ascertained, but such decree would be simply a decree *in personam*, having no more effect upon the moneys payable to him for work done under this contract with the city, than upon any other property belonging to Eschbach.

Nor can we discover from the averments of the bills any facts upon which it can be held that this money was impressed with any trust in favor of the complainant so that he could seize upon it in the hands of Eschbach, or follow it into the hands of his assignees taking with actual knowledge of all the claims and pretensions he now sets up. It is true that modern decisions have fully recognized the right of a *cestui que trust* to follow the trust funds into the hands of any one charged with notice of his rights, and have extended the doctrine and held parties to be trustees' and funds trust funds to be so followed, in many cases and under many circumstances where some of the earlier decisions would not have so treated them or allowed them to be thus followed. The decisions upon this subject have been elaborately and ably reviewed by the Supreme Court in the recent case of *National Bank vs. Insurance Co.*, 14 *Otto*, 54, where money was deposited in Bank and the Bank was held chargeable with notice that the depositor received it in a fiduciary capacity. This Court has also gone quite

as far as any other in sustaining jurisdiction in equity in such cases. *Dillon vs. Connecticut Mutual Life Ins. Co.,* 44 *Md.,* 386. But in all these cases something more was required than the mere relation of debtor and creditor. It must be shown that the party sought to be charged as trustee held the fund in *some fiduciary character,* and that his assignee or the party with whom he deposited it is chargeable with notice of the rights of the equitable owner. If we are right in the views already expressed no such case is presented by this bill. The complainant was not the owner of the fund in controversy, nor had he any lien upon or equitable right to it. Eschbach did not collect it for him or receive it as his agent. He was simply a debtor of the complainant for services rendered and had the same right to dispose of his property that any other debtor would have. Assuming then that Lanahan and Haugh when they took the assignments from Eschbach, had notice of all the facts alleged in this bill, still they did not receive the money so assigned to them impressed with any trust in favor of the complainant, and it follows he is not entitled as against them to the relief which the bill prays for. With reference to the allegations, if any there be, which may be regarded as charging fraud against these assignees, or either of them, it is sufficient to say that this is not a creditors' bill, assailing the assignments upon the ground that they were executed in fraud of the creditors of Eschbach. Under such a bill such charges would be pertinent, but it is clear that the complainant's present case would not be helped even if these assignments were set aside as fraudulent; for, as we have shown, it is essential to the maintenance of this bill that it should aver *facts* from which the *Court can see* that the complainant has a *lien* on this particular fund, or that it is impressed with a *trust* in his favor, and it fails to make out any such case.

If then the complainant is not entitled under this bill to any relief against Lanahan and Haugh, it is plain it can-

not be maintained against them as a bill for discovery. Where a bill is filed for relief no person can be made a party to it who is unaffected by the relief, notwithstanding he might give important discovery, because as against himself discovery is needless, and as against the other parties it would be unavailing, for the discovery so obtained is only available against the answering defendant; his answer cannot be read as evidence against any other person, not even against another defendant to the same bill. *Adams' Eq.*, 20; *Story's Eq. Pl., sec.* 570. Besides if the complainant chooses to prosecute the suit against Eschbach alone, as we have assumed he may, these parties may be called as witnesses, and the general rule is that discovery will not be compelled from any persons who can be made witnesses in the cause in aid of which the discovery is sought. *Adams' Eq., page* 20, *note* 2; *Story's Eq. Pl., sec.* 570.

It is manifest from what has been said that the injunction prayed for against the Mayor and City Council cannot be granted, and this renders it unnecessary to determine whether considerations of public policy alone would prevent the city from being brought into this litigation.

*Order affirmed, and*

*cause remanded.*

(Decided 16th February, 1883.)