## JOHN BRUNS ET AL. *vs.* CHARLES E. SPALDING
### ET AL.

*Partnership—Share of Profits—Bill for Accounting by Assignee of
one Partner's Share of Profits After Termination of Business—
Statute of Frauds—Agreement to Build Houses and Divide
Profits Arising from Sale of Ground-Rents—Injunction—Re-
ceivers.*

The fact that one of two persons by whom a business is conducted is
to receive a definite share of the profits is a circumstance entitled to
much weight in determining whether such person is a partner or not.

When a bill in equity alleges that plaintiff was defendant's partner in a
certain transaction and the facts set forth in the bill *prima facie* sus-
tain that allegation, it must, upon demurer to the bill, be assumed
to be true.

One partner is entitled to maintain a bill in equity against another for
a discovery and accounting.

When a partner has assigned a definite portion of his share of the
profits of the partnership, the assignee is entitled to maintain a bill
in equity for an accounting and the ascertainment of the profits so
assigned.

An agreement between two persons to improve certain real estate, sell
the same and divide the profits is not within the statute of frauds.

Where a party agrees with the owner of a tract of land to cause a
number of houses to be erected thereon subject to certain ground-
rents reserved by the owner, and it is stipulated that the proceeds of
the sales of the rents shall be divided between the parties, after de-
ducting the money expended by the owner of the land, then upon
the completion of the houses, the ground-rents being marketable, a
bill in equity lies against the owner thereof for a discovery and ac-
counting for the profits so agreed to be divided.

One joint owner of a fund arising from a business carried on in com-
mon with another, may maintain a bill in equity for an accounting.

By an agreement between defendant, the owner of a tract of land, and A, it was stipulated that A should procure a builder to erect a certain number of houses thereon and assist him in obtaining materials, &c., and that defendant should make a bonus advance to the builder. Upon the completion of the houses the ground-rents thereon were to be sold by defendant at a designated capitalization. From the proceeds of the sale defendant was to receive the amount paid by him for the land and the amount advanced as a bonus with interest on these sums, and the remainder of the proceeds of sale was to be equally divided between defendant and A. The builder of the houses failed before they were finished and a receiver was appointed. A made an arrangement with the creditors and the receiver to complete the houses, and in pursuance of it borrowed money from plaintiff to whom he agreed to assign his interest in the profits as security. The houses were finished, and plaintiff, as assignee of A, filed a bill against defendant alleging a sale by him of some of the ground rents and a refusal to sell others at the valuation agreed upon, and asking for a discovery and accounting and the appointment of a receiver. *Held,*

1st. That plaintiff is entitled to an account for the share so assigned, of the ground-rents sold by the defendant, and for the value of those which defendant had refused to sell, but that a receiver should not be appointed unless it should subsequently become necessary in order to afford relief to plaintiff.

2nd. That pending the accounting the defendant should not be allowed to enforce or assign a promissory note executed by A, endorsed by plaintiff and held by defendant, if it was a part of the aid given by plaintiff for finishing the houses, but that if the note was an independent transaction, such injunction should be refused.

Appeal from a *pro forma* decree of the Circuit Court No. 2, of Baltimore City. The houses referred to in this case were situated on the northeast side of Eutaw Place, beginning at a point 77 feet north from the corner of Eutaw Place and Laurens street, and running thence northerly on Eutaw Place 231 feet 3 inches, with an even depth easterly of 130 feet to Jordan alley.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*R. B. Tippett* and *Wm. S. Bansemer,* for the appellant.

The assignment by Singer to the appellants was for value, it distinctly appropriated a part of the profits to be derived,

and makes the sum assigned specifically payable out of them. Undoubtedly, an equitable lien was thus placed upon the profits which will be enforced against the person holding the fund. *James* v. *Newton*, 142 Mass. 378 ; *National Bank* v. *McLoon*, 73 Me. 504 , *Superintendent* v. *Heath*, 15 N. J. Eq. 22 ; *Crain* v. *Aldrich*, 38 Cal. 514 ; *Pomeroy Eq. Jur.*, sec. 1280 ; *Peugh* v. *Porter*, 112 U. S. 742. The contract stipulating for a division of profits arising from sales of the land, does not so relate to a conveyance of the land itself, as will bring it within the operation of the statute of frauds. *Howell* v. *Kelly*, 149 Pa. St. 475 ; *Benjamin* v. *Zell*, 100 Pa. St. 37 ; *Hardesty* v. *Richardson*, 44 Md. 624 ; *Muhlbach* v. *South Baltimore*, 69 Md. 405. Improvements having been put upon the land, and its value having been enhanced through the efforts of Singer, in accordance with his contract with Spalding, and that contract having appropriated one-half of the profits to be derived from the sale of the ground rents to Singer, it follows that Singer would have an equitable lien upon the proceeds of the sales ; and upon sales being prevented by Spalding, an equitable charge or lien upon the rents themselves to secure payments for his claim. *Girault and wife* v. *Adams*, 61 Md. 13 ; *Johnson* v. *Johnson*, 40 Md. 196 ; *Duckett* v. *Duckett*, 71 Md. 360. Equity will create a lien between certain parties, where it finds upon general consideration of justice (*ex æquo et bono*), one party should be compensated for what he has done or suffered. This lien gives a right to or over some particular thing, as a tract of land, personal property or a fund. *Williams* v. *Harlan*, 88 Md. 1.

The chief contention of the appellees, that the Singer-Spalding agreement cannot be one of partnership, rests upon the absence of stipulation on the part of Singer to contribute to losses. The law is well settled, however, that no such stipulation is necessary. *Hull* v. *Barth*, 55 N. Y., Supp. 1104 ; see *Flower* v. *Barnekoff*, 20 Or. 143, 137 ; *Richards* v. *Grinnell*, 63 Ia. 51; *Tyler* v. *Waddingham*, 58 Conn. 384. Further, if the venture had proven unsuccess-

ful, while Spalding would have lost actual money, Singer would have lost his expenditure of time and labor and credit, his accepted contribution of the partnership enterprise.

The claim of the appellees, that the statement " for services rendered " in the plaintiff's exhibit, precludes the idea of partnership, falls to the ground, when taken in connection with the statement:   " The title of which rents is held by Charles E. Spalding, except two of same which have been sold to him, but not accounted for to me.   Any interest in said rents being one-half of the profits in sale, and with the allegations in the amended bill, which show such a community of interest in the profits as clearly indicate a partnership."

The principle that equity jurisdiction, having once attached, will be maintained for a final adjudication of all rights involved, entitles the appellants to an injunction to restrain Spalding from collecting the $1,500 note.   The above rule is one of the many applications of the maxim, " Equity prevents multiplicity."   The jurisdiction having attached, the Court will determine all questions arising from the claims and counter-claims of the parties to the controversy, and with a view of ending litigation between the parties will adminster complete relief.   See *Phelps' Jur. Eq.* 260 ; *Pomeroy Eq. Jur.*, sec. 231; *Kunkel* v. *Fitzhugh*, 22 Md. 576 ; *Insurance Co.* v. *Ryland*, 69 Md. 437 ; *Insurance Co.* v. *Gillet*, 54 Md. 218 ; *Gormley* v. *Clark*, 134 U. S. 349 ; *Crislip* v. *Teter*, 43 W. Va. 365.

*George R. Willis* and *John L. V. Murphy* (with whom was *Francis T. Homer* on the brief), for the appellees.

A bill for an account can be maintained only when : " *First.* Where there are mutual accounts between the plaintiff and the defendant ; that is, where each of the two parties has received and paid on account of the other. *Second.* Where the accounts are all on one side, but there are circumstances of great complication or difficulties in the

way of adequate remedy at law ; and, *Third.* Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account." *Miller's Eq.*, sec. 721, p. 823, quoting *Pomeroy Eq. Jur.*, sec. 1241.

1. There was no mutuality between Spalding and Heise & Bruns.   2. There was an adequate remedy at law after appellants proved the amount of money due them ; the *onus* of proving the amount of appellees' priorities was on said appellees, and there is no necessity for a bill in equity to discover and account.   *Oliver v. Palmer*, 11 G. & J. 443 ; *Adair v. Winchester*, 7 G. & J. 114.   3. No fiduciary relation exists, or is alleged to exist, between the appellees and the appellants.   4. There is no doubt that if Singer had wished to collect his commissions from Spalding he would have had to sue at law.   " The mere fact of assignment confers no jurisdiction."   *Adair v. Winchester*, 7 G. & J. 117.   There is not such privity between the appellants and the appellees as will entitle them to an account and discovery.   The alleged agreement (in par. 2 of amended bill) between Singer and Spalding did not constitute them partners.   Where a bill alleges that persons are partners, but the contract between the parties (stated in the bill) shows that they are not partners, the truth of the allegation is not admitted by demurrer.   *Miller*, sec. 133.

" The averment that a partnership existed, founded upon antecedent verbal negotiations, is a conclusion of law not admitted by the demurrer."   *Reddington v. Lanahan*, 59 Md. 437 ; *Winter v. Gorsuch*, 51 Md. 180, 186 ; *Story Eq. Pl.*, sec. 451 (*a*).   The agreement alleged in the amended bill did not constitute a partnership.   As to parties *inter sese*, no partnership can exist without the intent and consent of both.   *Waring v. Nat. Mar. Bk.*, 74 Md. 278, 280–282 ; *Barnett v. Pulliam*, 3 Ill. App. 185 ; *Wright v. Taylor*, 9 Wend. (N. Y.) 538.   As to third parties, a partnership is implied only when persons have held themselves out as partners, whereby said third persons, acting on the assumption that they were partners, were deceived.   *Thomas* v.

*Green*, 30 Md. 1 : *Lindley, Partnership*, 46. The mere fact that a person is paid a share in the profits of a transaction will not constitute him a partner. *Bull* v. *Schuberth*, 2 Md. 54, 55, 56 ; *Crawford* v. *Austen*, 34 Md. 50.

Since the agreement alleged does not of itself constitute a partnership, and since no such intent is alleged between Singer and Spalding as to form a partnership, but is rather negatived in the assignment of Singer's interest to the appellants (Plaintiffs' Exhibit " E,") in which said Singer's one-half interest is referred to as for services rendered, then there was no express partnership, as alleged in amended bill. Heise & Bruns do not allege that they gave the credit to Singer, believing him to be a partner of Spalding, nor were they in any wise deceived by Spalding's holding himself out as a partner. They gave to Singer the credit on the security of his share of the profits, and accepted the assignment of his share of the profits (Plaintiffs' Exhibit " E,") on account of services rendered by Singer to Spalding. Nor does the amended bill allege that the appellants have since discovered any fact that they did not know at the time of accepting the assignment from Singer. The appellants accepted the agreement with full knowledge of the fact that Singer's one-half was for services rendered. Moreover, they did not, by their bill, seek to set it aside upon the ground of fraud or to reform it on the ground of mistake. On the contrary, the whole bill proceeds on the theory of its validity. They stand upon it, insisting that under it Singer is a partner, and make it a part, at least, of the foundation for the relief prayed for. Taking this position they must accept all the legal consequences flowing therefrom. One of them is that Singer is not a partner. *Reddington* v. *Lanahan*, 59 Md. 437. The principal reason for amending original bill, and the only change in it as amended, is to allege that Singer was a partner of Spalding's.

There is a material variance between the assignment alleged, which speaks of the proceeds or profits arising

from an agreement of partnership, and the exhibit, which shows the assignment to be of one-half of the net proceeds of transaction "for services rendered." If Singer and Spalding were not partners then this bill for discovery and relief cannot be maintained against the appellees, since there is no privity of contract or fiduciary relation between the appellants and the appellees. *Reddington* v. *Lanahan.* 59 Md. 435.

There is no such imminent danger as would justify the appointment of a receiver, nor have the appellants alleged any fraud, nor have they shown or alleged any title to the property. *Blondheim* v. *Moore,* 11 Md. 364; *Heflebower* v. *Buck,* 64 Md. 15.

BOYD, J., delivered the opinion of the Court.

The appellants filed a bill in equity against the appellees and Frank O. Singer, Jr., to which the appellees demurred, and the demurrer having been sustained an amended bill was filed and a *pro forma* decree was passed sustaining a demurrer to it and dismissing both bills. As the latter contains the material parts of the original one, it will only be necessary to discuss it.

According to the allegations in it, Charles E. Spalding was the owner of a tract of land on Eutaw Place in the City of Baltimore, and he and Frank O. Singer, Jr., entered into a parol agreement for its development to the following effect: Singer was to procure a builder who would lease, from Spalding, the land in twelve sub-divisions, each being subject to a ground-rent of $506.25, and who would improve each of the lots by the erection of a dwelling house thereon. Singer was to devote his time and pledge his credit in assisting and enabling the builder to obtain the necessary materials for the construction of the houses. Spalding was to contribute $24,000.00, as a bonus, to aid the builder. As soon as the houses were completed and the ground-rents became marketable, the latter were to be sold by Spalding and out of the proceeds of the sales he

was to receive the purchase money paid for the land, the amount advanced as a bonus; six per cent interest on those sums and an extra bonus advanced by him after the work was begun. . He was to deduct those sums from the proceeds of sales of the ground-rents and the accrued rents from July 1, 1897, and the remainder was to be equally divided between him and Singer. One Joseph K. Hubbard was procured by Singer as the builder, the leases were made to him and he proceeded with the erection of the twelve houses, but, before completing them, he failed and receivers were appointed to take charge of them. Spalding then notified Singer that unless he procured the consent of the creditors to have the houses completed by the receivers, and unless they were so completed, he would consider the agreement at an end, and Singer would not be entitled to the stipulated division of profits. Singer made the arrangement and the houses were completed, but in order to have that done he, at the request of Spalding, entered into a contract with the receivers, whereby he agreed to furnish all the mill work necessary and, with the knowledge and assent of Spalding, agreed to pledge his interest in the profits to the complainants, who were lumber merchants, in order to obtain financial aid from them, and to guarantee the claim they held against Hubbard. The complainants furnished the receivers with materials amounting to $1,163.00 and advanced $6,780.00 in cash to Singer. Those amounts, and the bill due by Hubbard, left Singer in debt to the complainants and, in accordance with his agreement to secure them out of his share of the profits, he gave them an order on Spalding for $7,500,00, and also executed an assignment of that amount of his profits to them. The bill alleges a demand on Spalding for Singer's share of the profits, to the amount due the complainants, and his refusal, and that Spalding had sold four of the ground-rents, had collected accrued rents and that he could have sold the other ground-rents, but had refused to do so at a full valuation. It is also alleged that a partnership ex-

isted between Singer and Spalding as to this transaction. The complainants pray (1), that Spalding may upon oath answer the bill and discover and set forth in detail all sums received by him, the amount expended by him for bonus and purchase money and that he account to them for all their interest in the profits ; (2), that he may be enjoined from collecting a promissory note for $1,500.00, which will be hereafter referred to ; (3), that receivers may be appointed to take charge of the ground-rents remaining unsold, with the power to sell them and distribute the fund so received and (4), for further relief.

It will be well to first determine whether the allegations, if true, are sufficient to show that a partnership existed between Spalding and Singer, for if we reach a conclusion in favor of the appellants as to that, it will relieve the case of some of the objections interposed by the appellees. The amended bill alleges in terms that Spalding and Singer " entered for their joint benefit and profit into a partnership agreement for the development of a certain tract of land," and, in speaking of what Singer was to do, it stated that he " was to make a contribution towards said partnership enterprise in this wise, etc." He was to receive one-half of the net profits resulting from the transaction and it is averred that Spalding recognized the arrangement as a partnership, that he notified Singer that unless certain things were done, as shown above, "he," the said Spalding, "would consider the said partnership agreement at an end." The terms of the contract, as set out in the bill, do not contradict the theory of a partnership, although it is contended on the part of the appellees, that the order and assignment referred to on their face do so. But we do not so understand them. In the first place they were given more than a year after the alleged partnership was formed and after the complainants had given their assistance in money and materials, for which they seek to be reimbursed in part. The order is to pay the money " out of profits due me for services rendered as *per* verbal understanding on Hubbard

Eutaw Place transaction," and adds " this order is given as *per* understanding with Heise and Bruns for the sale of lumber and mill work to receivers for completing said houses, if there was any shortage said Singer was to pay out of his profit in transaction," and the assignment reads "I hereby assign to Heise and Bruns $7,500.00 of my claim and interest in and arising out of the twelve ground-rents of $506.25 * * * * *. The title of which rents is held by Charles E. Spalding, except two of same which have been sold to him, but not accounted for to me. My interest in said rents being one-half of the profits in sale." There is nothing in either of them to show that the profits in the transaction he referred to were not his profits *as partner*, but when they are taken in connection with the allegations in the bill they would presumably refer to such profits and they may have been worded as they were to show that the complainants were to be paid by Singer— out of his share of the profits—and not by the firm. Such was the understanding, as alleged in the bill, which also charges that the pledge of Singer's interest in said profits was made "with the knowledge and assent of said Spalding." Singer had undertaken in the discharge of his part of the partnership contract to have the houses completed and it was proper that his profits and not those of the firm should protect the complainants, although he had informed the complainants of his partnership with Spalding.

It is true that the mere fact that a party is entitled to receive a definite share of profits out of a business does not necessarily make him a partner, but as was said in *Badeley* v. *Consolidated Bank*, L. R. 38 Ch. Div. 239, " it is one of the circumstances, and a very strong one, which are to be taken into consideration for the purpose of seeing whether or not a partnership exists." In *Thillman* v. *Benton*, 82 Md. 73, we said "we take it then to be well settled that a partnership is a contract of some kind involving mutual consent of the parties, and when such a contract is entered into between two or more persons for the purpose of carrying on

a trade or business, with the right to participate in the profits of such trade or business, then such a contract constitutes a partnership, unless there be other facts and circumstances which show that some other relation existed." See also *Rowland* v. *Long*, 45 Md. 439, in connection with what is said of it in the case last cited. The case of *Reddington* v. *Lanahan*, 59 Md. 429, relied on by the appellees, differs widely from this. There Reddington claimed that a partnership existed between him and one Eschbach, under an agreement which provided that the former should have one-sixth of the net profits arising from a contract that Eschbach had with the Mayor and City Council of Baltimore, but in the contract itself it was expressly stated that Reddington was not a partner. Manifestly *he* was not entitled to relief in a Court of Equity on the theory that he was a partner when he had, by the very terms of the contract he sought to enforce, expressly agreed that he was not.

It being then distinctly alleged that Singer and Spalding were partners, and there being nothing in the bill which we think contradicts that allegation, but on the contrary *prima facie* sustains it, we must, for the purposes of this case, as now before us, assume it to be true. That being so, are the complainants entitled to relief in a Court of Equity ? The case of *Reddington* v. *Lanahan*, *supra*, in effect concedes that if Reddington was a partner, and, as such, entitled to share in the profits arising from the execution of the contract, he would be entitled to relief in a Court of Equity, and there can be no doubt about the right of Singer to maintain a bill in equity for an accounting, if it be true that he was a partner of Spalding. The contract was executed on his part and he is entitled to have an accounting and settlement of the partnership. The appellants are subrogated to his rights, to the extent of the assignment to them. The Courts of most of the States in this country, as well as the Supreme Court of the United States, hold that a Court of Equity will recognize and enforce an assignment of a definite portion of a debt or *chose in action*, even without

the consent of a debtor.    2 *Ency. of Law* (2nd ed.) 1070.
In *Gibson* v. *Finley*, 4 Md. Ch. 75, the Chancellor spoke
. doubtfully as to whether an assignment of a part of a fund
was an equitable assignment, without such assent.    In
*Wilson & Co.* v. *Carson & Co.*, 12 Md. 54, and *Harris*
v. *Mayor, etc., of Baltimore*, 73 Md. 39, this Court said that
a creditor could not split up and divide his claim without
the consent of the debtor, but both of them were suits at
law, and, without stopping to discuss that question, this bill
expressly alleges that Spalding assented to the assignment.
Indeed it may be that when an account is taken the assign-
ment may cover more than is due, and as the appellants are
subrogated *pro tanto* to the rights of Singer they are entitled
to have an accounting, so as to ascertain just what the profits
arising from this transaction are.    A Court of Law could
not properly ascertain the status of the accounts between
the partners and a Court of Equity is usually the only Court
in which accounts between partners can be settled.

But independent of the question whether there was a suf-
ficient allegation of partnership, there is another ground
upon which relief in equity can be given.    In the very ex-
cellent note to the case of *Wiggins* v. *Bisso* in 5 Am. &
Eng. Decisions in Equity, on page 72, the question of ac-
counting between joint owners of property is discussed.
One of the instances there mentioned, in which it is said a
bill will lie, is "to adjust the rights of those who are en-
titled to a share in the profits of a business adventure."
Some of the cases there cited are very analogous to the one
before us.    In *Petrie* v. *Torrent*, 88 Mich. 43, the com-
plainant had a verbal option under which he could purchase
certain lands, timber and other property.    Not having suf-
ficient means himself, he made an arrangement with the
defendant by which the latter agreed to pay one-half of the
expense of examining the timber and, if satisfactory, to fur-
nish the purchase money for the property and give the
complainant one-third of the net profits from the sales.
The complainant agreed to pay the other half of the ex-

pense of examining the timber, and to give his services in carrying out the enterprise. The purchase was made and the property taken in the name of the defendant, who, with the complainant's assistance, sold some of the property for more than the total cost, and he contracted for the manufacture of the rest of the timber into lumber, one-half of the gross receipts of which he was to receive. After he had received a large amount of such receipts, and on his failure to account to complainant for his share of the net profits, a bill in equity was filed by complainant and he was granted relief. In *Scudder* v. *Budd*, 52 N. J. Eq. 320, the complainant and defendant made a parol agreement to build houses for sale, the latter to advance the money and the former to contribute his skill and time, each to have half of the profits after sale. It was held that, independent of the question whether a partnership existed between the parties, the complainant was entitled to maintain a bill for an accounting. See also *Channon* v. *Stewart*, 103 Ill. 541; *Massachusetts General Hospital* v. *State Mutual Life Assurance Company*, 4 Gray, 227 ; *Hargrave* v. *Conroy*, 19 N. J. Eq. 281, and other cases referred to in the note above mentioned. So whether Spalding and Singer were, technically speaking, partners or not, the latter would be entitled to file a bill for discovery and accounting under such circumstances as are alleged in the bill. The case of *Union Passenger Railway Company* v. *Mayor, etc., of Baltimore*, 71 Md. 238, might also be referred to as supporting this view.

We would remark in passing that the fact that the agreement was not in writing does not invalidate it as the Statute of Frauds is not applicable. *Petrie* v. *Torrent, supra; Scudder* v. *Budd, supra; Howell* v. *Kelley*, 149 Pa. St. 475. Especially is this so when the contract is executed. *Hardesty* v. *Richardson*, 44 Md. 624 ; *South Baltimore Co.* v. *Muhlbach*, 69 Md. 404.

The bill only alleges that four of the ground-rents have been sold, but it is alleged that the defendant is unnecessarily delaying the sale of the others, which for eight

months have been marketable, and the defendant has refused to sell them at a full valuation, which complainants are advised would be at a capitalization of five and five-eighths to five and one-half per cent. It is charged that it was agreed that they should be sold at a capitalization of five and five-eighths per cent, and therefore, if it be true that the defendant had refused to sell them, as alleged, the complainants are in a position to demand an accounting by Spalding for their value. As he was, under the agreement, to hold the property in his name until they could be sold, at the rate agreed upon, we can see no necessity for the appointment of a receiver unless the testimony develops such facts as may justify that course, but the Court below should require Spalding to discover and account with the complainants.

The bill also alleges that " sometime during these transactions the said Singer procured the endorsement of the complainants upon a certain promissory note for the amount of $1,600, which was negotiated to the defendant, Charles E. Spalding," which had been renewed from time to time and $100.00 paid on the principal, and it asks that Spalding be enjoined from collecting the note or enforcing the payment of the same in any manner, pending this cause.' It is not alleged that the note was given in connection with the agreement between Singer and Spalding, but only that it was endorsed " sometime during these transactions." If it was given and endorsed by the complainants, as a part of · the agreement to aid Singer in this enterprise, Spalding should not be permitted to enforce it, pending the accounting which we have said should be required, but if it was not, a Court of Equity should not interfere with its collection. As the bill stands, the Court could properly have sustained the demurrer to that part of it, and was right in refusing to grant the injunction. But as there was error in dismissing the amended bill, the decree will be reversed, and the defendants should be allowed a reasonable time in which to answer, after this case is remanded. Whether or not a re-

ceiver should be appointed must depend upon the facts which may be developed.

No question was raised at the argument as to the right to make Mrs. Spalding a party to the proceedings. We do not understand why she was, as the allegations in the bill are not sufficient to show that the ground-rents belonged to the partnership, but only the profits in the sale of them. As Mrs. Spalding was in nowise connected with the transaction and her inchoate right of dower cannot be affected by this proceeding, so far as we can see from the bill, if a sale should follow, there appears no reason for making her a party.

The decree dismissing the amended bill will be reversed. Each party will be directed to pay their own costs in this Court, the costs in the Court below to abide the result of the case.

> *Decree reversed and cause remanded, each party to pay their own costs in this Court, and the costs below to abide the result of the case.*