# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 4, 1917.

KENDAL T. MURPHY
VS.
JAMES B. SMITH, ET AL.

*Laurie H. Riggs* for plaintiff.
*Robert Biggs* for defendants.

DAWKINS, J. —

On the 27th day of March, 1916, the plaintiff filed a bill of complaint charging that the plaintiff and Claude R. Whitaker and Edward F. Ruggles put in a bid under the name of Smith & Ruggles for building sanitary sewers in Baltimore City under what was known as contract No. 134. That before the contract was awarded the plaintiff went to his former home in the State of Illinois with the full knowledge and approval of the defendants for the purpose of procuring additional capital for the use of the said firm. That whilst he was away, James B. Smith and the other defendants drew up a co-partnership agreement among themselves for the purpose of engaging in the contracting business and left out the name of the plaintiff. That subsequently the plaintiff returned to Baltimore City with $1,000 and demanded that he be allowed to contribute said sum to the capital of said firm, but the members of the latter agreed that the $1,000 was not needed, but as the plaintiff had gotten James B. Smith to contribute $2,000 to the capital of the partnership that the plaintiff should share with James B. Smith his interest in said partnership, all of which was agreed to by all of the partners. That the plaintiff worked with the defendants in the contract, each partner having a drawing account. That the profits have been collected without any distribution being made by the defendants. Whereupon the plaintiff prays for a full accounting of the profits arising from said contract. The defendants answered separately the bill and deny the material averments of the bill. The defendants, other than James B. Smith, say that they have no definite knowledge as to the arrangement between the plaintiff and the said Smith. They admit payment of amount due under the contract, but deny that the plaintiff has any right to participate in the same. They deny that any arrangement was made as to $1,000 for the use of the business or that there was any such partnership, but allege

that the plaintiff was employed to work for the defendants, and that the plaintiff was paid all that was due him for said work. The defendant Smith admits that he did promise to give the plaintiff one-half of what profits he received, but that this in no way made the plaintiff a partner. It is also contended that the defendant Smith paid to the plaintiff $1,000 in full settlement of all claims that he might have under the partnership, for which payment a receipt was duly given and the contract between the plaintiff and the defendant was delivered to the plaintiff's attorney.

Unquestionably the plaintiff never became a partner of the firm that was actually formed for the purpose of obtaining and did obtain the contract. Whilst it might have been very bad treatment and might have been very unfair after he had been partly instrumental in procuring the contract and getting together some of the necessary capital to carry on the business, besides going to Illinois to get more money, etc., yet doing all of these things did not make a co-partnership if the defendants saw fit to enter into an independent agreement during his absence. In justification of the defendants' actions it is apparent that they were compelled to go ahead before the plaintiff returned, yet that necessity would not seem to justify the leaving out of the plaintiff of any participation in the contract.

The defendants felt that something was due to the plaintiff by putting him at work on the job at a good salary and by arranging with the defendant Smith for a division of such profits as he would receive out of the contract when completed with the plaintiff.

The defendants contend that when the profits became known the plaintiff has a right of action, if any, against Smith. It can not be said that this is a contract carried on for the benefit of all the parties to the agreement. In no manner could any one doing business with Smith & Ruggles or with Smith alone hold the plaintiff in case of any dereliction.

The plaintiff drew a salary from said firm. To look after Smith's interest he was given one-half of what Smith was to make. He had nothing whatever to do with the business of Smith & Ruggles except to perform the du-

ties for which he was paid. He had nothing to do with Smith's part, except to perform what he agreed to do, and as compensation for doing this he was to receive one-half of what Smith made, without obligation of any kind whatsoever. There is not a particle of evidence that the plaintiff ever, in any way after the work began, held himself out as being a member of the firm or that any one so regarded him. He is, therefore, not a partner. 82 Md. 64, Thillman vs. Benton.

If not a partner, it has been suggested that recovery can be had as a "sub-partner," since the relationship of the plaintiff was known to all of the defendants. Can one become a partner of any kind merely by acquiring by assignment of one-half of that party's interest in the profits of the business as compensation for taking care of and watching over the interests of one member of the firm? The status of the plaintiff must be fixed by the paper writing of December 16, 1914, between him and the defendant, James B. Smith, which recites:

"That as a consideration for the said Kendall T. Murphy working for said firm of Smith & Ruggles and looking out for the interests of the same and also for the interests of the said James B. Smith during his absence that * * * the said Smith would share equally and divide with * * * Murphy * * * whatever profits that he would be entitled to from the contract," the said Smith "does hereby grant, assign and transfer unto the said party of the second part" (Murphy) "one-half of that part of the net profits," etc. It has been contended that even if the plaintiff did not become a partner or a sub-partner that he had a right to an accounting of this business, under the authority of Bruns vs. Spalding, 90 Md. 349, because equity will adjust differences among those entitled to share. This plaintiff did not in any way share in the losses of the firm of these defendants. He was an employee of the defendant Smith. Whatever is due him is not due by the firm, but by Smith. If the firm settled its business today Smith would be entitled to receive his interest and the plaintiff would have to collect from him.

It is true that a bill in equity should be maintained to enable one of two persons engaged in business to have an accounting or discovery and where a

partner has assigned a definite portion of his share of the profits of a partnership, the assignee is entitled to maintain such a bill in order to ascertain the profits so assigned. In the case in 90 Md., 360, Bruns vs. Spalding, above mentioned and relied upon by the plaintiff, it seems the situation is very analogous to the one before us. There was a fund created for a certain definite purpose, which was withheld from an assignee who had furnished material to complete the work in hand upon the faith of the share of one of the partners in the profits which had been pledged in order to obtain aid to finish the houses mentioned in the controversy. The partners, in effect, made the arrangement together for the assignee to do what he did do. One partner, Spalding, assented to the assignment made by Singer. A court of law could not properly ascertain the status of the accounts, so whether Smith and Murphy were partners or not, Murphy has a right to know what these defendants made on this contract, so he should be entitled to an accounting. Under the facts of this case, I do not think that the relation of debtor and creditor has been established in the sense that this plaintiff should be denied the right to know what profits Mr. Smith received from this contract, but it has been contended that even if the plaintiff is otherwise entitled to an accounting he has received by settlement all to which he is entitled, and that as his attorney has collected in full settlement the sum of $1,000 and obtained the return of certain notes and the surrender of an agreement, to which reference has already been made, he is not entitled to the relief he seeks. The defendant avers that this was intended to be a full and complete settlement. The plaintiff, on the other hand, says it was only intended as a partial settlement. Mr. Riggs' recollection is quite to the contrary of that of the defendant Smith as to just what was meant. Mr. Riggs' memoranda made at the time in the form of letters to the plaintiff gives color to his understanding, but surely does not give such definiteness as to make it conclusive. The plaintiff, in a letter in which he estimated the profits only a short time before, to the plaintiff, had said that he would accept $750 as part payment or $1,250 for his whole interest in the

contract and consider it at an end as far as he was concerned. If this be true, why was $1,000 paid in cash without any promise to pay any more at that time? Why was the letter sent January 6, 1915, by Smith to the plaintiff, in which he asked that the contract be sent and promised to get his (plaintiff's) money, although the defendants had not gotten settlement unless it was meant that a settlement was to be had. The contract was surrendered. This was apparently meant to be an end of the matter. The erasure of "as payment on account of" from the receipt of January 14, 1915, would rather show that it was meant to be in full. To say nothing of the statement of Smith that the money would not have been paid unless he understood it to be in full payment. Why did not the plaintiff say something as to his further rights in his subsequent letter of February 27, 1915. I am satisfied that Mr. Riggs understood that Mr. Smith would pay balance if there should be any additional profits to be divided, but the circumstances stated bear out the other view. It has been urged though that even if Mr. Smith is right in his interpretation of the terms of the settlement that, as there is no evidence that Mr. Murphy gave authority to Mr. Riggs to accept less than was due, or that he ratified the settlement made. Mr. Riggs' general agency and representation as attorney has been proven and admitted. It is admitted that this settlement was made at a time when the profits were not known and when Smith had received no profits. The better reasoned cases have gone very far towards sustaining the power of attorneys to bind their clients by compromise or other disposition of cases intrusted to them, when there has been no special authority given for that purpose and no directions to the contrary. An attorney has no right to bind his principal to a settlement for less than his claim, but when the attorney has no direct authority, if the client accepts the settlement or holds the fruits thereof, he is estopped from denying authority. He is not permitted to confirm by claiming the benefits and repudiate the authority by which it was effected. If he has received the proceeds and does not disavow the acts of his attorney as soon as he can after notice he confirms the whole (?). A

partial ratification operates to confirm the whole. (See letter of February 27, 1915, confirming the arrangement about surrendering the notes.) The first protest in the form of letters from the plaintiff and Mr. Riggs would seem to come rather late. Acquiescence in the facts and circumstances of the case, when the client was in a position to know all of the facts of the case would seem to be sufficient to bind him. If this be true, it is not necessary to show the plaintiff's actual ratification or of his attorney's accepting, less than the amount that may now be due. We do not know the amount due because the figures were only admitted, consent not having been given to their admission.

The understanding was that they would not be admitted so far as determining any issue now being considered. The conclusions reached as to the right to the attorney (now and then) representing the plaintiff to repudiate the settlement are not inconsistent with the principles announced in the case of 39 Md. 485, Maddox vs. Bevin. See, especially, the separate opinion filed by Judge Stewart. 51 Md. 56, Fritchey vs. Bosley; 65 Md. 560, Horsey vs. Chew; 102 Md. 41, Real Est. T. Co. vs. Union T. Co. et al.

The weight of evidence indicates that at the time of the settlement it left nothing open except the somewhat indefinite promise that Mr. Smith would pay the plaintiff whatever would be coming to him. It seems clear, too, that the plaintiff did not disapprove of what was done. For the reasons given the bill will be dismissed.