THOMAS KIRBY ET AL. *v.* GEORGE KIRBY
[No. 48, October Term, 1944.]

*Decided December 20, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*John S. Strahorn* for the appellant, Thomas Kirby.

*George B. Woelfel* for the appellee.

GRASON, J., delivered the opinion of the Court.

Appellee (George Kirby) instituted this proceeding against appellant (Thomas Kirby) in the Circuit Court for Anne Arundel County, in equity. The original bill of complaint contains the following allegations, which will be set out in narrative form:

Thomas owned a tract of land in Anne Arundel County, containing approximately sixteen acres. In 1936 he entered into a oral agreement with George, whereby George was to work the land in tobacco, and when cropped, it was to be equally divided between them. Under the oral

agreement, set out in the bill, Thomas was to furnish: (1) all fertilizer, (2) all seed, (3) one-half the team, and (4) one-half the labor needed for planting and housing the tobacco. George was to supply: (1) one-half of the labor used in planting and housing the tobacco, (2) one-half of the team, (3) all of the labor used in cultivating and raising the tobacco, and (4) all of the labor necessary for stripping and packing the same. George worked the place from 1936, through to and including the year 1940. During this period nothing happened to disturb their amicable relations regarding this enterprise. In 1940 George was behind in his work and Thomas furnished labor necessary to get the crop out of the way so that the barn could be used for the 1941 crop. All of the 1940 crop of tobacco was sold, except eight hogsheads. In March, 1942, George shipped the eight hogsheads of tobacco to market. It was shipped in both names, having been held over until 1942 in order to obtain a better price. In 1942 Thomas sold the eight hogsheads of tobacco and procured all of the money from the Maryland Tobacco Growers Association (with the exception of two hundred and five [$205] dollars), which he divided. This he claimed was due him for labor he hired in stripping and packing the tobacco in the year 1940. George contends Thomas is not entitled to any charge for labor during 1940, but in any event this amount is exorbitant.

It is alleged in the original bill that George continued to work the place until June 20, 1941, when he was prevented from continuing doing so by illness. At that time, it is averred, more than two-thirds of the crop had been planted and he and Thomas agreed that Thomas would finish the crop, strip and pack it, and after deducting the costs thereof, the remainder would be divided equally. It is charged, instead of making the division, and contrary to the agreement, Thomas shipped the crop in his own name, received all the proceeds, and refused to give George any of the proceeds or to account for the same. The original bill further charges that Thomas

owes George for repairing the barn, for building him a tobacco prize, for cutting poles, for removing fourteen locust trees, and for grubbing an orchard on the place, which work he avers was done at the request of Thomas and for which he has never been paid. The bill prayed: (a) for an accounting, (b) that Thomas be compelled to pay to George his share of the proceeds of the tobacco, (c) that Thomas be compelled to pay George for the work done by him for Thomas's account, and (d) for other relief. To this bill a demurrer was filed and the Chancellor, in a very thorough and careful opinion, sustained the demurrer with leave to amend. The amended bill of complaint made Thomas Kirby and the Maryland Tobacco Growers Association, a body corporate, defendants. It set out the allegations contained in the original bill and is more definite and certain than the original bill. It asks for the same relief and in addition thereto that the Maryland Tobacco Growers Association be compelled to deposit the sum of two hundred and five ($205) dollars in Court, subject to the award to be made by the Court. This sum was a part of the proceeds of the 1940 crop, which it sold on order of Thomas, and in its possession at the time this case was instituted. A demurrer was filed to the amended bill and the Court sustained the demurrer as to the fifth paragraph of that bill, with leave to amend. The second amended bill of complaint contains the same parties as the amended bill, the same prayers for relief, and is more definite and certain than the amended bill. To the second amended bill of complaint Thomas answered and denied the allegations with respect to the 1940 crop and denied that George worked the farm in tobacco in the year 1941.

From the decree passed by the Chancellor, this appeal was taken.

It is contended by appellant that appellee had a remedy at law, and a court of equity is without jurisdiction to hear and determine the case. This contention, in view of previous decisions of this Court, presents no difficulty. In *Bruns v. Spalding,* 90 Md. 349, at pages 360 and 361,

45 A. 194, at page 196, this Court considered fully the law applicable to the case at bar. What was said there will not be repeated in full here. It was held in that case that a bill will lie: "to adjust the rights of those who are entitled to a share in the profits of a business adventure." Again in *Legum v. Campbell,* 149 Md. 148, 150, 131 A. 147, 148, it is said: "Independently of any question of partnership, it was held in *Bruns v. Spalding,* 90 Md. 349, 45 A. 194, that a suit in equity could be maintained for an accounting as to the profits of an enterprise in which the parties were jointly interested." This statement of the law was repeated in *Zalis v. Orman,* 175 Md. 100, 102, 199 A. 877, and in *Whitely v. Schoenlein,* 183 Md. 590, 39 A. 2d 692, 695, Judge Collins said: "Aside from any question of partnership, this Court held in the case of *Bruns v. Spalding,* supra, that a suit in equity could be maintained for an accounting of the profits of an enterprise in which the parties were jointly interested, and a bill will lie to adjust the rights of those entitled to a share in the profits of a business adventure."

From the allegations of the bill it is apparent the parties hereto were engaged in a business enterprise of raising tobacco and, without restating the allegations of the bill, it is sufficient to say, from the facts therein averred, it presents a case for equitable cognizance and appellee was entitled to an accounting. This gave the court jurisdiction, and it needs no authority to support the proposition if a court of equity has jurisdiction for one purpose it has jurisdiction to adjust and determine all the rights of the parties.

Thomas Kirby and George Kirby are brothers. This tract of land belonging to Thomas was worked by George, under an oral agreement between them, from and including 1936, to and including 1939, and no dispute during these years arose between them. In 1940 George was behind in his work and Thomas furnished labor necessary to get the crop out of the way so that the barn could be used for the 1941 crop. He sold this tobacco crop and claimed the $205 in the hands of the Tobacco

Growers Association should be applied to the cost of labor supplied by him in getting out the 1940 crop. George claims that he began the 1941 crop but suffered a serious illness and Thomas agreed to finish this crop, charging George only actual cost. Thomas asserts that George gave up the farm before the 1941 crop was started and that he has nothing to do with the crop for that year.

The record in this case contains sixty-eight pages of testimony. It is conflicting and we will not attempt to analyze it in detail. From all of the testimony, the Court found that George continued to farm this place until June, 1941, when he became ill, and Thomas agreed to take over thereafter and complete the crop for that year, charging against George's share the fair cost for labor. In his opinion, the Chancellor adjusted the claims of the parties arising from their disputes with respect to labor employed during the years 1940 and 1941, and all other claims. There is evidence that warrants his finding, and this Court will not reverse the Chancellor on finding of facts unless the record discloses he was clearly wrong. He saw the witnesses who testified. The way and manner testimony is given by a witness, his frankness or evasiveness, is of great value in determining his credibility. This Court will not reverse the Chancellor, who saw the witnesses, on a finding of fact, unless there is manifest error.

Some comment was made at the argument in this Court concerning the use of certain books that were offered as part of the evidence. They contained entries alleged to have been paid labor during the years in controversy. During the examination in chief of Thomas Kirby two pages of a book were offered in evidence, marked "J. D. S." Under cross-examination "pages in book marked J. D. S." were offered in evidence. Later on there was a book referred to, which had not been produced and the record shows as to this book "offered in evidence to be produced and filed." The book referred to was later produced to the Court for use in the consideration of the case. Counsel for appellant stated items in these books

126

not offered in evidence were used by the Court. These books are not before this Court, and it cannot be presumed that the Chancellor did consider anything but the evidence before him. On the contrary, it will be presumed that all of the items contained in these books or pages thereof referred to by the Chancellor were properly before him.

We have carefully considered all of the evidence in this case and are of opinion that the decree of the Chancellor should not be disturbed. The law and the facts were carefully considered by the Chancellor and his disposition of the case was fair and equitable.

*Decree affirmed, with costs to appellee.*