CATHARINE FARINGER,
PERMANENT TRUSTEE OF
JACOB FARINGER,
vs.
ELIZA RAMSAY AND WILLIAM
EHRMAN.

SAME
vs.
ELIZA RAMSAY.

March Term, 1850.

[RESULTING TRUSTS—FRAUDULENT CONVEYANCES—INSOLVENT LAWS.]

A TRUST which results to the party who pays the consideration money for lands, is expressly exempted from the operation of the statute of frauds, and the fact of payment may be established by parol proof.

But though the fact of payment may be shown by parol proof, the evidence must be so strong as to leave no reasonable doubt upon the subject, because of the danger of this description of proof, not only as tending to perjury, but on account of the insecurity to which its introduction exposes the paper title.

Where a party seeks to avoid deeds as fraudulent under our insolvent system he must allege in his bill and prove, that the grantor was indebted at the time of the execution of the conveyances sought to be vacated, and that the deeds were made or caused to be made by him with a view or expectation of taking the benefit of the insolvent laws.

Where a party seeks to avoid deeds as fraudulent under the statute of Elizabeth, he must also allege and prove the existence of creditors at the date of the conveyances, or that the grantor contracted debts subsequently, in respect of which the deeds would be regarded as fraudulent.

[These cases originated in the equity side of Baltimore County Court. The bill in the first case was filed on the 3d of July, 1849, and alleges that Jacob Faringer, sometime in the year 1849, applied for the benefit of the insolvent laws, and that on the 11th of June, 1849, the complainant was appointed his permanent trustee, the said Jacob having in the mean time departed this life. That the complainant was lawfully married to said Jacob in the year 1829, by whom she had six children, five of whom are now living, and have been supported by the complainant since the 20th of June, 1841, when the said Jacob, without fault on her part, left her and went to live with one

VOL. IV—3

Eliza Ramsay, with whom he continued to live until the time of his death. The bill then charges that said Jacob was a thriving, money-making and saving man, who rapidly accumulated means which he invested from time to time with a view to securing for himself the advantage of it during his life, and disposing of it for the benefit of the said Eliza Ramsay after his death, and to deprive the complainant and her children by him, of all benefit of it in his life, and after his death. That so contriving and intending, on the 5th of February, 1847, he purchased a house and lot situated on Lombard street, near Canal street, in the city of Baltimore, and had the same conveyed to said Ramsay by a deed, from Daniel J. Hoppoldt and Samuel Kramer, the owners and vendors thereof, dated the 5th February, 1847. The complainant expressly charges that the purchase money was furnished by said Jacob and that the deed was made to said Ramsay for the fraudulent purpose of enabling said Jacob to enjoy the property during his life, and to leave it after his death to said Ramsay, disencumbered of the interest of complainant therein as his widow, and for the further fraudulent purpose of rendering the same free from the claims of his creditors, and of the complainant for a support. Wherefore, the bill charges, that said contrivance was fraudulent, and that in equity the complainant as permanent trustee of said Jacob is entitled to have said property brought into the assets of the estate of the said Jacob to be distributed according to law. The bill further charges, that the said Ramsay, on the 2d of July, 1849, offered the property for sale on the premises. That the complainant, by her agent, appeared and gave notice to the purchasers that she, as trustee as aforesaid, claimed this property and would assert her right thereto in the proper tribunals. That one William Ehrman agreed to become the purchaser thereof, on the assurance of the auctioneer that he would not be required to pay any of the purchase money until his title thereto was clearly established and free from all incumbrance and claim on the part of the complainant. The bill then prays that the said property may be decreed to be a part of the estate of the said Jacob, to be administered according to law, and for further relief.

The answer of Eliza Ramsay, the defendant, was filed on the 31st of August, 1849, and after admitting the insolvency of Faringer, and the appointment of the complainant as his permanent trustee, expressly denies that the property mentioned in the bill was purchased by said Jacob, and as positively avers that the said property was purchased for this respondent, and paid for by her with her own money, and that said Jacob never had actually or constructively, legally or equitably any right, title or claim to the same.

The bill in the second case contains similar charges and averments in reference to a certain house and lot on the corner of Lombard and Canal streets in said city, which was conveyed to said Eliza Ramsay by one William E. Beale, by deed dated the 7th of April, 1845, for the price of $800. To this bill also an answer similar in every respect to the preceding one was filed by the said Eliza Ramsay. The answer of Ehrman admits that he became the purchaser of the property as charged in the bill, and prays that he may be dismissed, &c.

The proof taken under the commission is of a conflicting character, and is sufficiently stated in the opinion for an understanding of the points therein decided. The causes were removed to this court, and after argument of counsel, the following opinion was delivered.]

THE CHANCELLOR:

These bills are filed by the complainant, as the permanent trustee in insolvency of Jacob Faringer, her former husband, but now deceased, and seek to set aside the deeds therein mentioned, not as frauds upon her marital rights, but upon the ground that they were made in prejudice of the rights of creditors. The allegations to be sure, are not entirely free from ambiguity. It being in one place alleged, that one of the objects of the conveyances was "to deprive the complainant, and her children by the said Jacob, of all benefit in it, in his life, and after his death." And in another place, that the deeds were made "to the said Eliza Ramsay for the fraudulent purpose of enjoying the property during his life, and leaving it to

the said Eliza Ramsay after his death, disencumbered of the interest of the complainant therein, as the widow of said Jacob, and for the further fraudulent purpose of rendering the same free from the claims of his creditors, and of the complainant for a support." Wherefore (the bill charges) that the said contrivance was fraudulent, and that in equity, she (the complainant) as the permanent trustee of the said Jacob, is entitled to have said property brought into the assets of the estate of the said Jacob, to be distributed according to law." The bills, however, are filed by the complainant in her character of permanent trustee of Jacob Faringer, and not as his widow claiming her share of his personal estate, and the question, therefore, is, whether in the former capacity she is entitled to have the conveyances avoided and the property turned over to her to be administered in insolvency?

These cases, then, in this view of the claim made by the bills, which upon the argument I understood to be the view taken by the plaintiff's solicitor, renders inapplicable to the questions now to be decided, the principles settled by this court in *Hays* vs. *Hays*, decided in February, 1849, because in that case the deed was impeached by the complainant, as widow, and it was set aside, and the property ordered to be sold for the purpose of paying her one-third of the proceeds, as widow. Every other question affecting the residue of the proceeds of the sale being expressly reserved.

The deeds in these cases were all made to the defendant, Eliza Ramsay, and vest in her the absolute and unqualified title to the property embraced in them. There is not upon their face the slightest reservation or indication of an interest, legal or equitable, in Jacob Faringer, and consequently his permanent trustee cannot question their validity or effect, unless she can show either that they are fraudulent under our insolvent system, or under the statute of Elizabeth, or that from the nature and justice of the case there is a resulting trust for the benefit of Jacob Faringer to be implied by law, from the fact that the consideration money was paid by him, and as trusts of this description are expressly excepted from the operation of

the statute of frauds, the fact of the payment may be established by parol proof. But although the fact of the payment of the money may be shown by parol proof, the evidence must be so strong and decisive as to leave no reasonable doubt upon the subject. The cases all concur in this because of the danger of this description of proof, not only as tending to perjury, but on account of the insecurity to which its introduction exposes the paper title. *Boyd* vs. *McLean*, 1 *Johns.*, *Ch. Rep.*, 582.

In this case I have examined the proof very carefully, and though there are circumstances connected with the transaction, and the condition, habits and occupation of the parties from which it may be inferred that the purchase money for these parcels of the property was paid by Faringer, I do not find that clear and positive testimony which the principles so frequently and finally settled imperatively demand. The evidence upon this point, in my judgment, falls far below the standard established by the authorities, and I, therefore, do not feel warranted in declaring that this property is impressed with a resulting trust for Faringer.

The deed from William E. Beale to Eliza Ramsay, was executed on the 7th of April, 1845, and that of Daniel J. Hoppoldt and Samuel Kramer, to the same party, on the 4th of February, 1847. On the day of the execution of the first deed, Eliza Ramsay executed a mortgage of the property thereby conveyed to her, to David N. Brown, to secure the payment of $212, for which she had given him her promissory note, so much being due to him from Beale, and which by agreement of the parties, she, Eliza Ramsay, was to pay to Brown, and on the 31st of March, in the year 1846, the debt due to Mr. Brown having been paid by Eliza Ramsay, he, on that day, released the mortgage which she had given to him to secure its payment.

Faringer died in the year 1849, but the precise time of his death is not stated, having in the same year applied for the benefit of the insolvent laws, and the bill alleges, that the complainant was appointed his permanent trustee on the 11th of June of that year.

The bill does not allege, nor is it shown in proof, that he was

3*

indebted at the time of the execution of the conveyances in question, unless the charge that "they were made to Eliza Ramsay for the fraudulent purpose of rendering the same free from the claims of his creditors," can be construed to amount to such an allegation. It seems to me, however, that the averment referred to, may quite as well apply to subsequent as prior creditors. But even if it is to be understood as meaning prior creditors, and that the object was to defraud them, there is no proof in support of the allegation, the existence of no such debt being shown. There is, besides, neither allegation or proof, that Jacob Faringer at the time of the execution of these instruments contemplated availing himself of the insolvent laws, or that they were made, or caused to be made by him with any such view or expectation, and, therefore, they cannot be declared to be void as frauds upon the insolvent system.

Neither upon the allegations of the bill, or the proofs in the cause, can they in my judgment, be pronounced fraudulent and void under the statute of Elizabeth, as having been made with intent to delay, hinder and defraud creditors. It is not averred, or proved, that there were any creditors at the date of those conveyances to be defrauded, hindered and delayed, nor indeed is it directly charged or proved, that Faringer contracted debts subsequently, even if the deeds could be regarded as fraudulent as against subsequent creditors. The fact of his having taken the benefit of the insolvent laws, in the year 1849, furnishes to be sure a strong presumption that he was indebted at the time, but there is nothing in the record, either in the shape of pleadings or proof, to show the amount of such indebtedness, or the value of the property which came to the hands of the complainant as his trustee. But if these defects in the case of the complainant were removed, still there would exist the difficulty of showing that the money with which the property was purchased was supplied by Faringer. It is true, there are circumstances from which it may be inferred that his money paid for the property, but it is equally true, that there are circumstances of a countervailing character, and the answer of the defendant responsive to the bill, stands directly opposed to any such inference.

Upon a careful consideration of the whole case, therefore, I do not feel myself at liberty to grant the relief prayed by these bills. The parties by their counsel have signed and filed an agreement that the proof taken in the first of the foregoing cases may be used in the second cause, as if taken in it, and for dividing the expense of executing the commission between the two causes which have been argued together, and depend upon the same principles. They will, therefore, be consolidated, and the bills dismissed, but under the circumstances they will be dismissed without costs.

WILLIAM M. ADDISON, for Complainant.
CHARLES H. PITTS, for Defendants.