JOHN Q. A. HOLLOWAY *vs.* JOSHUA J. TURNER. JOSHUA
J. TURNER *vs.* JOHN Q. A. HOLLOWAY.

*Partners—Dissolution—Bill for an Account, and a Receiver—*
*Expenses of winding up Partnership—Reimbursement—*
*Limitations—Interest—Balance after Settlement of Accounts*
*between Partners.*

After the dissolution of a partnership disputes arose between the two
partners, and a bill in equity was filed by one of them against the
other for an account, and for a receiver, to take charge of the
undistributed assets of the firm. Receivers were appointed, and
a decree for an account was passed. Among the partnership prop-
erty there were two farms, and during the partnership B. had
charge of one of them and D. of the other. After the dissolution one
partner ordered B. and D. to remove from the farms, and discharged
them from his service, and the other ordered them to remain and
contiuue their care of the farms. The Court below passed an
order authorizing the receivers to pay all expenses incurred or to
be incurred for the wages of the employés on the farms; and the
receivers for some time afterwards continued the employment of B.
and D. HELD:

1st. That although the partnership was dissolved these farms were
still partnership property, and either partner had a right to incur
reasonable expense in protecting them from injury.

2nd. That the receivers had authority under said order of Court to
employ B. and D. and to pay them for their services, past as well
as future.

3rd. That under the bill to settle the affairs of the partnership the
partners had a right to insist that the partnership creditors should
be paid. .

4th. That B. and D. had a right to file their claims for their services
in this case, and it was not necessary for them to resort to actions
at law to enforce their payment.

After the dissolution one of the partners continued to employ the
book-keeper of the firm for the purpose of keeping the books while
the liquidation of the business was in progress. HELD:

Holloway *vs.* Turner.

That it was necessary that some one should keep the books, and no reason having been shown why the former book-keeper should not be employed for this purpose, his claim for his services thus rendered, was properly allowed by the auditor.

After the dissolution of the partnership, one of the partners, H. placed in the G. A. Bank for collection notes belonging to the firm. The proceeds of these notes when collected remained on deposit in the Bank. No portion of it was used for his own personal benefit. It was set apart as the money of the firm, and was capable at any moment of complete and ready identification. HELD:

That it was perfectly right that H. should hold this money until a proper settlement could be made with his partner. And as he was not responsible for the delay which took place in the accounting, and had kept the money intact, and entirely separate from his own individual funds, and had made no profit out of it, it would not be just to charge him interest upon it.

The firm was composed of T. and H. The son of T. rendered services to the firm as a clerk from April, 1866, up to the time of its dissolution in March, 1878. There was no agreement as to the salary he was to receive. Although H. was displeased at the son's connection with the business, he did not make known his objections to T. He himself gave orders to him which were obeyed. HELD:

1st. That there was no evidence in the record from which it could rationally be inferred that the son's services were to be rendered without compensation; and he ought to be paid for them.

·2nd. That having been paid by his father, the latter was entitled to be reimbursed to the full extent of the value of the services.

3rd. That the plea of limitations could not avail against this claim of one partner for money paid in behalf of the firm.

4th. That as T. had all the money which was drawn by his son charged to himself year after year, and never made a demand for a settlement, which he could have obtained at any time, he was not entitled to interest.

After an account is settled between partners, and a balance ascertained, a right to sue arises, and from that time the Statute of Limitations begins to run. But when a decree for an account between partners has been passed, all the claims existing between them arising out of the partnership affairs must be brought into the account for adjustment.

CROSS-APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Samuel D. Schmucker*, and *Bernard Carter*, for Holloway.

*George Hawkins Williams*, for Turner.

*David S. Briscoe*, for Joseph R. Douglass, claimant.

BRYAN, J., delivered the opinion of the Court.

The parties to this suit were formerly partners, doing business under the name of J. J. Turner and Company. After many years of successful business, they ·dissolved their partnership and divided between themselves the greater portion of their assets. Some disputes arising between them, Turner filed a bill in equity in the Circuit Court of Baltimore City, for an account of the unsettled affairs of the partnership, and for the appointment of a receiver to take charge of the undistributed assets of the firm. Receivers were duly appointed, and after an answer by Holloway, a decree for an account was passed. Among the property of the partnership, there was a farm in Baltimore County, and one in Prince George's County.

The case was referred to the auditor in the usual way, and after taking a good deal of testimony, he stated ten accounts. To these accounts both parties filed exceptions. We will state the matters embraced in these exceptions.

First. It appears that during the existence of the partnership one Douglass had charge of the farm in Prince George's County ; and one Button had charge of the farm in Baltimore County. After the dissolution of the part-

nership these men received contradictory orders from the late partners. Turner required them to remove from the farms, discharging them from his service; and Holloway ordered them to remain, and to continue their care of the farms. Button's dismissal was in January, 1879, and Douglass' was in October of the same year. The partnership was dissolved on the nineteenth of March, 1878, and the receivers were appointed on the twentieth of October, 1879. On the tenth of November, 1879, the Court below passed an order authorizing the receivers to pay all expenses theretofore incurred, or thereafter to be incurred for the wages of the employés on the said farms. The receivers continued the employment of Douglass and Button until sometime in February, 1880. Although the partnership was dissolved, these farms were still partnership property, and either partner had a right to incur reasonable expense in protecting them from injury; and the services of Douglass and Button enured to the benefit of the partnership by the express command of one of the partners. Certainly the receivers had authority under the order of Court, of November the tenth, to employ them and to pay them for their services, past as well as future. It has been argued in behalf of Turner, that Douglass and Button have no right to file their claims in this proceeding, and that their remedy is only by an action at law. But it must be remembered that this is a bill to settle the affairs of the partnership, and that, under it, the partners have a right to insist that the partnership creditors shall be paid. The partners have a lien on the partnership property for the payment of the partnership debts; and it is in consequence of this lien that the joint creditors are paid, and not by reason of any independent right which such creditors possess. It is not material to inquire on this head, whether a partnership is solvent or insolvent; the rights of the partners do not depend on such question. They each have a right to be freed from all responsibility

for the partnership debts, so far as this can be accomplished by applying the partnership property to their payment. It is only in subordination to this right of the partners that the claims of the creditors are permitted to be presented. The learned Judge below sustained the claims of Douglass and Button, and we concur in his decision.

Second. Luchesi was the book-keeper of the firm during its existence. After the dissolution, Turner continued to employ him for the purpose of keeping the books while the liquidation of the business was in progress. It was necessary that some one should keep the books, and no reason has been shown why the former book-keeper should not have been employed for this purpose. The auditor allowed two hundred and fifty dollars for this service. The Court below overruled an exception by Holloway to this allowance, and in this decision we concur.

Third. Holloway collected, after the dissolution, several thousand dollars, which he kept in the German American Bank. It appears that he placed in the bank for collection notes belonging to the firm, and that this money was the proceeds of these collections. The money remained deposited in the bank, and no portion of it was ever used for his own personal benefit. It was set apart as the money of the firm, and was capable at any moment of complete and ready identification. It was perfectly right that he should hold this money until a proper settlement could be made with his partner. We do not find that he is responsible for the delay which has taken place in the accounting, and as he has kept the money intact, and entirely separate from his own individual funds, and has made no profit out of it, we do not think that it would be just to charge him with interest on it. The learned Judge below decided that he was not responsible for interest, and we agree with him.

Fourth. In two of the accounts stated by the auditor he allowed Turner the sum of eleven thousand two hundred

and seventeen dollars and seventy-four cents ($11,217.74) with interest, for the services of his son as one of the clerks of the firm while it was in existence. It appears that Turner, Jr., rendered services to the firm as a clerk from April, 1866, up to the time of its dissolution in March, 1878. There was no agreement as to the amount of salary he was to receive, but it was perfectly well known to both partners that he was working in the service of the firm. Although Holloway seems to have been displeased at the young man's connection with the business, and to have expressed to the other clerks his disapproval of it, yet he does not appear to have made known his objections to Turner. He gave orders respecting the business to the young man, and as far as we can learn from the evidence in the record, they were always obeyed. As the son of the elder partner, it was natural that he should be on a more favored footing than the other clerks; but if this was objectionable to Holloway, he might have stated his objections to Turner, and brought the matter to a decision.

We do not think that it would be reasonable to infer that the services of young Turner were to be gratuitous. It is true that no moneys were paid to him directly out of the partnership funds for his services. The amounts drawn by him were charged to his father's account. His father allowed him annually a much larger sum of money than he claims as compensation for his services; and, probably, it was for this reason that all of the money received by him was charged to his father's account. It is not, however, our duty to make conjectures as to the motives of the father in keeping the account in this manner. We find no evidence in the record from which it can rationally be inferred that young Turner's services were to be rendered without compensation, and we therefore determine that he ought to be paid for them. He was paid by his father, who is therefore entitled to be reimbursed to the full extent of the value of the services. The plea of limitations cannot avail against this claim of one partner for

money paid in behalf of the firm. After an account is settled between partners, and a balance ascertained, a right to sue arises, and from that time the statute begins to run. But when a decree for an account between partners has been passed, all the claims existing between them arising out of the partnership affairs must be brought into the account for adjustment.

As the partners did not settle the amount of salary to be paid to Turner, Junior, we are left to ascertain this sum, as well as we can, by the aid of the uncertain light shed on this question by the evidence. And we cannot find in the record any better guide than the rule adopted by the firm in respect to the other clerks employed by them. Applying this rule, with a proper adaptation to the circumstances, we think that he ought to have one hundred and fifty dollars for the first year; two hundred dollars for the second year, and an increase of a hundred dollars thereafter, each successive year, until his salary reaches nine hundred dollars, and then he should receive this last mentioned sum per annum, until the dissolution of the partnership. But as Turner had all the money which was drawn by his son charged to himself year after year, and never made a demand for a settlement, which he could have obtained at any time, we do not think that he is entitled to interest. We agree with the learned Judge of the Circuit Court in allowing compensation for young Turner's services, but we differ from him as to the amount to be paid.

The result is, that on the appeal of Turner, the order of the Circuit Court is affirmed; and on the appeal of Holloway it is affirmed in part, and reversed in part.

We think that the costs in this Court ought to be paid equally by both partners.

> *Order on the appeal of Turner, affirmed;*
> *and on the appeal of Holloway, affirmed*
> *in part and reversed in part.*