# FRANK MAXA et al. vs. EZEKIEL T. JONES.

*Partnership — Appointment of Receiver — Business Not Yet Launched—Equity Jurisdiction.*

A bill which does not pray for the dissolution and winding up of a partnership, but merely asks that the court enforce the partnership agreement for the parties by carrying on the business for them through a receiver, is not maintainable, especially when the business of the partnership is not yet started, and therefore without established prospects. pp. 461, 462

Where a partnership enterprise has never been launched, and there are no partnership operations which require an accounting and winding up, equity has no jurisdiction, the only remedy for the wrong involved in defendant's refusal to go for-

ward with the enterprise being an action at law for breach of the contract of partnership.      pp. 462-464

A court will not ordinarily specifically enforce a partnership agreement by compelling the parties to go forward with it themselves.      p. 464

*Decided June 11th, 1925.*

Appeal from the Circuit Court for Harford County, In Equity (HARLAN, J.).

Bill by Ezekiel T. Jones against Frank Maxa and Hannah Maxa, his wife. From an order overruling a demurrer to the bill, defendants appeal. Reversed.

The cause was argued before BOND, C. J., ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*John S. Young,* for the appellants.

*Albert F. Wheltle,* with whom were *Stevenson A. Williams* and *Charles F. Harley* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The bill of complaint filed by Ezekiel T. Jones shows an agreement between himself and Maxa and wife, forming a partnership, for the term of three years, for the mining, removing, washing, and selling of sand and gravel from land owned by the defendants in Harford County. By the terms of the agreement the defendants were to contribute to the partnership the exclusive right to mine, wash, and sell the sand and gravel, retaining, however, their fee simple ownership of the land, and were to furnish and instal a washing machine and supply water, all capable of washing twenty-five cubic yards per hour. And Frank Maxa was to superintend and supervise the work. . Jones, on his part, was to sell the product, keep the books, and attend to the financial affairs. The proceeds of sales were, first, to pay in full for the equipment, then pay a royalty to the Maxas; and the net proceeds after these payments, and payment of other expenses, were to be divided as profits.

The plaintiff avers, further, that he had, in pursuance of the agreement, gone to great expense and incurred large financial obligations in procuring the motor trucks, and had submitted samples of the sand and gravel to possible buyers and was in the act of closing valuable contracts, when the defendants refused to go on with the partnership; and it is alleged that they had been for some time mining and marketing the sand and gravel on their own account in disregard of the partnership arrangement. And on these averments the bill prays that, as a means of realizing for the plaintiff and the partnership the benefits contemplated by the agreement, the court should appoint a receiver to take charge and carry on the business, and distribute the net profits in accordance with the agreement, that it should restrain the defendants from interfering, and require an accounting to the partnership, and, also, that the court should award damages to the plaintiff for breach of the partnership agreement. The prayer for general relief was added.

To this bill the defendants demurred, and the demurrer was overruled; and from the order overruling it, the defendants appeal. Our opinion is that the bill cannot be maintained, and that the demurrer should have been sustained. And that for several reasons.

In the first place, the bill does not pray for a dissolution and winding up of the partnership. It asks merely that the court enforce the partnership agreement for the parties by carrying on the business for them through a receiver. That this is the full purpose seems clear from the allegation previously made that the rights intended to be secured under the partnership agreement will be of little value "unless said sand and gravel business can be carried on in a business-like manner for the full period of said agreement." This, we think, is not within the functions of the court, and could not be undertaken by it, assuming it were proper to appoint a receiver at all. "The court will never, on motion, appoint a receiver to take possession of the property and effects of a subsisting partnership, unless it appears that the plaintiff

will be entitled to a dissolution at the hearing," "for otherwise the court might make itself the manager of every trade in the kingdom." *Walker v. House,* 4 Md. Ch. 39, 45. "While a receiver," says *High on Receivers,* sec. 480, "may be directed to continue a business a sufficient length of time to enable the court to determine the rights of the parties litigant, it is not the province of the court to become the superintendent and manager of the private business of parties." And the same author, in section 36, says: "While it is sometimes necessary for the court, by its receiver, to continue the management of the business over which the receiver is appointed, for the purpose of effecting a more satisfactory adjustment and for better protecting the interests of all parties, yet the courts are generally averse to assuming the management of a business, except as incidental to the object of the suit, and for the purpose of closing it up. * * * Nor will a receiver be authorized to begin a business which has not yet been undertaken by the parties, such as the manufacture and sale of medicines under letters patent."

While, as has just been stated, the court may at times find it necessary to continue a business as an aid to the accomplishment of the primary purposes of the litigation, it will order this step only with hesitation, and only in extraordinary situations can it permit a receiver to make for the court any considerable business contracts and commitments. Here, in addition to doing all this, the court is asked to engage in a business not yet started, and therefore with no established prospects. This, we think, would at least be far beyond the limits of the court's discretion.

Again, it would seem that the enterprise had not gone forward sufficiently to afford any ground for equitable jurisdiction. That jurisdiction is regularly invoked for accounting and dissolution as a necessary means to the adjustment of the results of partnership operations, between the partners and with strangers. The plaintiff here alleges that he procured the motor trucks which he was to contribute to the partnership capital, and tendered them for use, and that he

negotiated contracts for the product.   But the defendants,
he alleges, refused to go forward with the enterprise for the
partnership.   The partnership enterprise was, therefore,
never launched, and there were no partnership operations
which required an accounting and winding up; nothing but
a breach of the partnership agreement to be dealt with.
"Agreements to carry on business at a future time," says
*Lindley on Partnership* (9th ed.), 16, "do not render the
parties to them partners before they actually do carry on
business.   It is carrying on of a business, not an agreement
to carry it on, which is the test of partnership."   "The basis
of the equitable remedy * * * is the necessity for the due
winding up of a partnership." *Bisham, Principles of Equity*
(8th ed.), sec. 508; 4 *Pomeroy, Equity Jurisprudence,* sec.
1421.   And the only remedy for the wrong alleged in the
present bill of complaint would be at law.

In *Powell v. Maguire,* 43 Cal. 1, there was a contract be-
tween the parties to establish and operate a ferry under a
franchise to be obtained from the state legislature in the
name of the defendant.   After having obtained the franchise,
however, the defendant had a boat built at his own expense
and started operations on his own account.   The plaintiff
sought to compel the transfer of one-half of the franchise and
ownership of one-half of the boat to him, and for an account-
ing.   The court said (page 11) : "In such cases it is well
settled that when the partnership was never launched, and
when one of the copartners has proceeded to conduct the en-
terprise in his own name, at his own cost, and for his own
exclusive benefit, excluding the other party therefrom, and
repudiating the partnership agreement, the only remedy of
the injured party is an action at law for a breach of contract.
There would be, in such a case, no existing partnership, but
only an agreement to form one, which was never consum-
mated by launching the enterprise."   And in a case on sim-
ilar facts [*Manny v. Burke,* 174 App. Div. (N. Y.) 654,
160 N. Y. Supp. 879], the court said:   "The plaintiff's
damages come from the fact that, by the defendant's breach,

the copartnership was never entered upon, and the plaintiff lost the profits which would have resulted therefrom. The plaintiff's rights come not from the copartnership business, but from the defendant's breach of the agreement to enter upon and conduct the copartnership business contemplated. The action, therefore, is to recover damages for breach of contract only."

And so in *Hyer v. Richmond Traction Co.,* 168 U. S. 471, in which two competitors for a street railway franchise agreed to unite their interests, and secure the franchise in the name of one for the use and benefit of both, but the one securing the franchise ignored the other and proceeded to construct the road for its own exclusive benefit; it was held that a bill in equity to obtain possession and enjoyment of a one-half interest would not lie, the remedy being at law only. And see *Hill v. Palmer,* 56 Wis. 123; *Clark v. Truitt,* 183 Ill. 239; and cases reviewed in 21 *A. L. R.* 22, note.

We have not overlooked the fact that the voluntary nature of the partnership relation has, also, long deterred the courts from forcing parties to a partnership agreement to go forward with it themselves (*Gusdorff v. Schleisner,* 85 Md. 360, 374), and has always prevented such enforcement when the parties were free to dissolve the partnership at any time, *Burdick on Partnership* (3rd ed.), 13, 14. *Story on Partnership,* sec. 189. And we have not overlooked the fact that under section 31 (2) of the *Uniform Partnership Act,* Code, art. 73-A, the law of this State now is that dissolution is caused: "In contravention of the agreement between the partners * * * by the express will of any partner at any time." It may be questioned whether these principles would not render the relief sought for here impossible even if the partnership operations had been launched; but it is not necessary to extend the opinion by pursuing that inquiry, or any other that may arise. The conclusions already stated require the reversal of the order overruling the demurrer to the bill of complaint.

*Order reversed, with costs to the appellants.*