JOSEPH J. OTTAVIANO *v.* NICHOLAS LORENZO
[No. 31, April Term, 1935.]

*Decided June 18th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Paul Schmidt,* with whom was *Isaac Lobe Straus* on the brief, for the appellant.

*Israel S. Gornborov,* with whom was *Joseph F. Di Domenico* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The bill of complaint originally filed in the suit of Joseph J. Ottaviano against Nicholas Lorenzo, also known as Nicola Lorenzo and Nick Lorenzo, the Savings Bank of Baltimore, and the Mayor and City Council of Baltimore, was before this court on an appeal from a decree which had overruled a demurrer to the bill of complaint. The opinion accompanying the order which reversed this decree and remanded the cause, with leave to the plaintiff to apply for permission to amend the bill of complaint, provided the chancellor should find the amended bill of complaint did not depart from the cause as first presented, is reported as *Lorenzo v. Ottaviano,* in 167 Md. at p. 138, 173 A. at p. 17. In pursuance of this leave the plaintiff filed an amended bill of complaint, and a motion of *ne recipiatur* was made by the defendant Nicholas Lorenzo, and denied by the chancellor. The defendant thereupon demurred to the amended bill of complaint, and the demurrer was sustained, with leave to the defendant to file a further amended bill of complaint. A second amended bill of complaint was then filed, and the defendants the Savings Bank of Baltimore and the Mayor and City Council of Baltimore appeared and answered. These two defendants disclaimed all knowledge of the material allegations, with the exception of those with which they were severally concerned. With respect to these matters, the bank admitted that on a savings account, which was begun on January 6th, 1915, in the name of Nicola Lorenzo in trust for self and Annie Lorenzo, joint owners, subject to the order of either, balance at the death of either to belong to the survivor, there was a credit to said account as of February 11th, 1935, of the sum of $19,554.47. Similarly, the municipality admitted that

all of the stalls in the market that were mentioned in the bill of complaint were licensed in the name of N. Lorenzo, with the exception of two which were licensed in the name of N. & A. Lorenzo. These two parties were made defendants in order to prevent any withdrawal or change in the deposit and any transfer of the municipal licenses for the stalls in market.

After these answers, the defendant Nicholas Lorenzo again filed his motion of *ne recipiatur,* which was denied, and renewed his demurrer, which was sustained, and the plaintiff entered an appeal from the ruling on the demurrer to the second amended bill of complaint.

The action of the chancellor on the motion of *ne recipiatur* was favorable to the plaintiff, so his appeal does not present the propriety of that ruling, and the single question is on the allowance of the demurrer. *Miller's Equity Proc.,* sec 136; *White v. Winchester,* 124 Md. 518, 522, 92 A. 1057.

A comparison of the allegations of the second amended bill of complaint with those which were before this tribunal on the other appeal will establish that the allegations of fact in the original bill of complaint have been much amplified, and additional facts have been added; and that the principal relief sought has been changed from specific performance to the creation of a resulting trust. These changes are material, and require that the legal sufficiency of the allegations of the second amended bill of complaint be considered as though freshly made. It follows that the decision in the first appeal may be looked to for the principles there applied, but that the result on this appeal will depend upon the well pleaded allegations of fact that have been admitted to be true by the demurrer to the second amended bill of complaint.

The substantial averments will now be stated. The plaintiff is the son of Frank Ottaviano and Annie Ottaviano, who conducted a fruit and vegetable business in Baltimore. The father died intestate in 1886 leaving surviving him his widow, who was then about nineteen years of age, and an only child, the plaintiff, who was about one

year old. At the time of his death, the parents owned jointly money and other property. While the allegations are not consistent, it is averred that the fruit and vegetable business was principally carried on in two stalls in Belair Market and one in Center Market; and that these were in the name of Frank Ottaviano at his death, and that his widow, who became the sole owner, continued in business. In 1889 she married the defendant Nicholas Lorenzo, who had, for five or six preceding years, been employed in the business as a laborer. No child has been born of this marriage.

When the plaintiff became old enough, he assisted his mother in the business and, after leaving school at the age of fourteen years, gave her all of his time. It is charged that before he became twenty-one years of age, the business became a partnership of the plaintiff, the mother, and the stepfather. Every one of the partners gave all of his and her time and attention to the business, and none received any stated salary, but there was withdrawn out of the profits only what was necessary for their immediate needs for clothing, food, household, and similar and ordinary expenses. The residue of the proceeds of the business was a common fund which was divided into a savings account and a checking account. The savings account was deposited in bank, first, in the name of Annie Lorenzo, and, later, in the names of Annie Lorenzo and Nicholas Lorenzo; and the checking accounts were in the name of N. Lorenzo & Son, subject only to the order of the plaintiff. The business and all of the property accumulated out of its profits were owned by the three partners in equal undivided parts. *Lindley on Partnership*, *74-76.

When the infant became of age, he received from his guardian approximately $1,200, which sum was his distributive share of the proceeds of sale of two of his father's stalls. On attaining his majority the plaintiff also ratified his contract of partnership and put this sum in the business, and another stall was purchased, and the business was expanded to include wholesale transactions.

The mother and stepfather largely confided the management of the business to the plaintiff, and when he became twenty-three years of age his mother and stepfather gave full control and management of the business to the plaintiff, who continued not to receive any fixed sum but to draw from the partnership profits only such sums as he needed, from time to time, to defray his personal expenses. The mother and the stepfather, however, continued to assist in the operation of the business and the property remained unchanged so far as the ostensible titles disclosed.

During or about the year 1915, it is averred, the plaintiff contemplated severing his connection with the partnership and starting in business on his own account, and he informed his partners of his purpose. His two partners were convinced that this withdrawal would be to their disadvantage, and they and the plaintiff, it is alleged, entered into a new oral agreement, which is thus stated: "That although it had always been understood and agreed by and between the plaintiff's mother, the defendant, the said Nicholas Lorenzo, and the plaintiff, that upon the death of both his mother and step-father, he, the plaintiff, would acquire and become the owner of all the property so accumulated and acquired by the joint efforts of the three of them, nevertheless they definitely, in or about the year 1915, agreed that if the plaintiff would continue to manage, conduct and control the business and manage and control the properties as he had for a number of years past and continue to allow the accumulation of profits, income and property to be held as in the past, that upon the death of the survivor of them, he the plaintiff, would become entitled to and acquire all the accumulated property."

At the time of this agreement, a leasehold interest, which Annie Lorenzo had acquired in a lot of land in 1907 and had then caused its title to be assigned to Nicholas Lorenzo, remained in his name. The partnership had a number of stalls in Belair Market, its stock in trade; and deposits in the Provident Savings Bank in the

name of Annie Lorenzo; in the Savings Bank of Baltimore in the joint names of Annie Lorenzo and Nicholas Lorenzo, and its business account in the Old Town Bank in the name of N. Lorenzo and Son, subject to the order of the plaintiff.

It is charged that, in consequence of this agreement, the partnership was continued as before, and that the plaintiff had charge and care of not only the business but also of all the properties in which its profits had become invested, and collected the rents from the properties and stalls, and paid the taxes, insurance, and incidental expenses, and had made all repairs and improvements. The three partners only withdrew from the partnership profits and income their living expenses, and the residue was accumulated in savings deposits in bank or invested in stalls in market or property.

The plaintiff further avers that the three parties, in order to assure the performance of their existing contract, agreed, about the time of its formation, that the property, business, and assets so accumulated should be given by will to the plaintiff, and that Nicholas Lorenzo should make a will to that effect. Accordingly, it is indefinitely stated that "in or about the year 1915" Nicholas Lorenzo did make such a will making the plaintiff his beneficiary, but provided that if the plaintiff die without issue the property should be divided between the brother of Nicholas Lorenzo and the son of the brother. The will was executed in the presence of the plaintiff, and placed in an iron box to which the three parties had access. It is alleged that this will "was intended to carry out the fixed, settled and agreed understanding between the said Annie Lorenzo, the mother of the plaintiff, and the defendant, Nicholas Lorenzo, and the plaintiff"; but, as was pointed out in the decision of this court, it was not in conformity with the agreement as set forth in the bill of complaint. The will did not, upon the death of the survivor of the mother and stepfather, devise and bequeath the property in question absolutely to the plaintiff, as was contemplated by the oral agreement set up

by the bill of complaint, and, so, cannot be accepted as a memorandum of the agreement of the parties within the meaning of the statute of frauds. See *Lorenzo v. Otta- viano, supra.* Furthermore, the specific allegations of the bill of complaint make it clear that the plaintiff does not rely upon this will as being in conformity with the oral agreement of the parties under which the parties acted until the death of the mother intestate on Septem- ber 16th, 1932, leaving surviving her the husband and her son, who are her only distributees and heirs at law.

The property, which is represented by the bill of com- plaint to be within the terms of the oral agreement of 1915, is, in addition to the mentioned leasehold interest, stalls and personalty owned at the time of this agree- ment, the following property: (1) A fee simple estate in a lot acquired in 1917 and in another bought in 1922, with the legal title in the mother and stepfather as ten- ants by the entirety; (2) seven market stalls with legal title in Nicholas Lorenzo and two stalls in the names of Nicholas Lorenzo and Annie Lorenzo, and all so held under license of the Mayor and City Council of Bal- timore; (3) a deposit in the Savings Bank of Balti- more of about $20,000 in the names of Annie Lorenzo and Nicholas Lorenzo, joint owners, subject to the order of either, balance, at the death of either, to belong to the survivor. All these estates in land, stalls in market, and moneys on deposit are averred to represent the accumu- lated profits of the business and are the investment of its net proceeds, no matter in what name deposited or how the title may have been put.

The bill further discloses that the mother had on de- posit in her own name in the Provident Savings Bank the sum of $6,000, which had accumulated from the prof- its of the business. Shortly before her death, she signed an order authorizing the plaintiff to withdraw this money, which he did, and divided it equally between himself and Nicholas Lorenzo.

After his mother's death, the plaintiff, upon the request of his stepfather, went to the safe deposit box

for the purpose of removing the contents, and the plaintiff observed a new paper which his stepfather told him not to touch. The papers were brought to the home where the three had lived and the plaintiff discovered that the will of 1915 had been revoked and that the stepfather, on November 13th, 1932, had executed a will whereby he had bequeathed all the money on deposit in the Savings Bank of Baltimore to his brother and his nephew; and had given two stalls in Belair Market to a cousin, a leasehold interest in the lot acquired in 1907 to a third party and his wife, the proceeds of his life insurance, after the payment of his funeral expenses, to the children of one of his cousins, and had devised and bequeathed the residue of his estate to the plaintiff for his natural life, and then over to certain relatives.

The pleader charges that the revocation of the will of 1915 and the execution of the will of 1932 is a breach of contract and of duty on the part of his stepfather, and will deprive the plaintiff of his rightful interests and property as contemplated by the contract of the three parties.

On these averments, the plaintiff, in addition to general relief, prays: (a) That the stepfather be declared to hold the properties, market stalls, and money as trustee for the use and benefit of the plaintiff in accordance with the terms of the agreement of the mother, stepfather, and plaintiff. (b) That the stepfather be required to answer the allegations under oath and to make full discovery of and respecting the will of 1915, and to make discovery and an accounting for all sums withdrawn from the account in the Savings Bank of Baltimore since the death of his wife. (c) That he be enjoined and restrained from selling, transferring, conveying, mortgaging, leasing, or otherwise disposing of any of the properties, market stalls, or moneys referred to in the amended bill of complaint; and that the Savings Bank of Baltimore be restrained and enjoined from allowing him to withdraw any of the funds here involved and there deposited; and that the Mayor and City Council of Bal-

timore be likewise enjoined from allowing him to transfer any of the licenses for market stalls on the books of said corporation. (d) That the will of Nicholas Lorenzo of November 13th, 1932, be annulled and set aside.

The effect of the recited material allegations of the second amended bill of complaint is to make clear that the oral contract of partnership between the mother, stepfather, and son does not involve any interest in land which had been owned before the formation of the partnership as an individual by one of the associates, who had agreed to convey or assign such an interest to the members of the partnership as partnership property.

By the averments, all the interests in land, in the stalls in market, and in the deposits in bank or in other financial institutions, are the deposits or investments, of the net profits or proceeds of the business of the partnership which have accumulated since the formation of the partnership. See Code, art. 73A, secs. 10 (3), 8; *Holloway v. Turner*, 61 Md. 217; *Citizens' Fire Ins. Co. v. Doll*, 35 Md. 89, 105-107, 6 Am. Rep. 360; *Groff v. Rohrer*, 35 Md. 327, 335; *Goodburn v. Stevens*, 5 Gill, 1; *Lindley on Partnership*, *414. The statute of frauds, therefore, does not apply, since it does. not require that an agreement of copartnership shall be in writing in order to enable the members, as among themselves, to show that the acquisition of an interest in land is within the contemplation of the contract of partnership. So, if an interest in land is acquired in the course of a partnership by the payment of funds of a partnership, and the grant or assignment of such interest is to one or more of the partners as individuals, a trust results in equity to the partnership. The grantees or assignees will hold the interest so acquired in a resulting trust for the use and benefit of the copartnership, and the trust is not within the statute of frauds and may be established by clear and certain and decisive parol testimony. *Browne on Statute of Frauds* (5th Ed.) secs. 84, 90, 91; *Lindley on Partnership*, 81, 323, 324, 329-332; *Perry on Trusts* (7th Ed.) secs. 127, 132; *Magen v. Neiman*, 301 Pa. 164,

151 A. 796; *Morgart v. Smouse,* 103 Md. 463, 467, 468, 63
A. 1070; *National Union Bank v. National Mechanics'
Bank,* 80 Md. 371, 386, 389, 30 A. 913; *Bruns v. Spald-
ing,* 90 Md. 349, 361, 45 A. 194; *Bryant v. Fitzsimmons,*
106 Md. 421, 67 A. 356 (personalty); *Coyne v. Supreme
Conclave,* 106 Md. 54, 57, 66 A. 704; (personalty); *Fooks
v. Williams,* 120 Md. 436, 442, 87 A. 692; *Clark v. Calla-
han,* 105 Md. 600, 614, 66 A. 618; See *Faringer v. Ram-
say,* 4 Md. Ch. 33, 36; *Keller v. Keller,* 45 Md. 269;
*Keller v. Kunkel,* 46 Md. 565; *State v. Wingert,* 132 Md.
605, 608, 104 A. 117; *Powell v. Mackenzie,* 137 Md. 266,
270, 112 A. 290; *Philbin v. Watson,* 129 Md. 497, 501, 99
A. 675; *Stone v. Nat. City Bank of Baltimore,* 126 Md.
231, 238, 94 A. 657. Compare *Hamilton v. Thirston,* 93
Md. 213, 48 A. 709.

There is, consequently, no difficulty interposed by the
statute of frauds to the establishment by the plaintiff by
parol testimony of the partnership agreement alleged.
The court is constrained by the demurrer to accept as
true the well pleaded allegations of the second amended
bill of complaint, and these state as a fact the associa-
tion by parol of the mother, the stepfather, and the son
to carry on as co-owners, under the firm name of N.
Lorenzo & Son, the retail and wholesale business of buy-
ing and selling for profit of fruit and vegetables in Bal-
timore City; and, further, that all the property origi-
nally brought into the partnership by the three partners,
as well as all other property subsequently acquired with
partnership funds, was purchased for the partnership
purposes and benefit with the intention that it should
become partnership property. Code, art. 73A, secs. 6,
8; *Southern Can Co. v. Sayler,* 152 Md. 303, 136 A. 624;
20 *R. C. L.,* title *"Partnership,"* secs. 62-66. In this part-
nership relation the statute expressly recognizes that
the rights of the partners with respect to their associa-
tion are determined by their agreement. Code, title
*"Partnership,"* art. 73A, sec. 18; *Lindley on Partnership,*
\*11. See *Gerding v. Baier,* 143 Md. 520, 521, 524-526,
122 A. 675; *Welsh v. Canfield,* 60 Md. 469, 473, 474;

*Baker v. Safe Deposit & Trust Co.*, 90 Md. 744, 753-759, 45 A. 1028; *Paul v. Cullum*, 132 U. S. 539, 10 S. Ct. 151, 33 L. Ed. 430; *Ex parte Ruffin*, 6 Vesey, 127, 128. So, the proportions in which the members of the partnership are entitled to the property of the partnership depend upon the agreement into which the parties have entered. Subject to the rights of the creditors, it follows that, unless fraudulent, the partners may agree that the joint property of the firm be converted into the separate property of one of its members; and, by force of the doctrine of equitable conversion, courts of chancery will give effect, on dissolution, to this agreement whenever the conversion clearly appears to have been the intention of the partners. *Supra; Lindley on Partnership*, *334-*336, *348-*350, *697-*698; Code, art. 73A, secs. 18, 25 (2) (a); *Fooks v. Williams*, 120 Md. 436, 442, 443, 87 A. 692; *Story on Partnership*, sec. 372; *Collyer on Partnership*, (Am. Ed.) secs. 115, 125, p. 184; *Bolton v. Puller* (1796) 1 Bos. & P. 539.

The parties having agreed, as is alleged, that the partnership property is to become the separate property of the son on the death of the survivor of his mother and stepfather, the two other partners, and the son, in reliance upon the contract, having fully performed his past engagements under the contract and being ready, able, and willing to continue to perform those that remain executory, would upon the principle of equitable conversion be entitled to hold the property involved in severalty upon the death of the surviving stepfather. *Supra*. There is no difficulty in enforcing in chancery an agreement in parol where, upon the faith of the contract, the promisee has, in the performance of his promise, either materially changed his condition and relations so that he cannot be restored to his original position by any legal remedy, or, under the facts and circumstances, his services were of such a nature that their value is impossible of admeasurement by any pecuniary standard. *Neal v. Hamilton*, 159 Md. 447, 451, 150 A. 867. On this principle, courts of equity have enforced parol contracts to

devise and bequeath realty and personalty, provided the terms of the contract are certain and definite and affirmatively proved by clear and convincing evidence.

In the cause at bar, there is no allegation that the current business affairs of the copartnership are not being now carried on in full compliance with the terms of the partnership agreement, nor that there has been any change in title to any property of the firm, whether in land, chattels real, or personalty. At the death of the stepfather, the partnership property, after a discharge in full of every partnership obligation, would, by agreement, pass in severalty to the surviving partner, and equity would compel the legal title to be perfected by the execution of such instruments of title as might be required for that purpose, notwithstanding any attempted testamentary or other disposition by the stepfather in assertion of a title or interest in conflict with or adverse to the trust under which partnership property is now held by him for the use and benefit of the partnership.

A testamentary paper is in nature ambulatory until the death of its maker, and, so, is generally revocable at pleasure, and becomes operative only at its executant's death. The stepfather executed such a document on November 13, 1932. It is averred that he has attempted to devise and bequeath realty and personalty which is partnership property, and which is in his name as trustee under a resulting trust for the use and benefit of the copartnership. So far as the document is an attempt to dispose of partnership assets it is abortive, but there are no allegations which would afford a court of equity sufficient reason to annul an instrument by which the maker disposed of the proceeds of insurance on his life, the residue of his estate, and named his executor. By attempting to dispose of realty and personalty as his property in severalty when, under the allegations of the bill of complaint, this property belongs to the partnership under a resulting trust, although the legal title is held by him in his own name by explicit grant or instrument of title, the stepfather has formally denied and repudiated the

contract which would give rise to a resulting trust, and asserted an absolute estate in severalty to property of which he is such *prima facie* owner. *Maxa v. Jones,* 148 Md. 459, 464, 129 A. 652.

The execution of the testamentary paper mentioned is, therefore, effective as a repudiation of the contract stated in the bill of complaint; and the court is of the opinion that, should the plaintiff, by clear and positive proof, establish the contract stated in the bill of complaint, he will be entitled to have the chancellor declare a resulting trust for the use and benefit of the partnership in the property of the partnership whose legal title is held in the name of the stepfather, and to cause the stepfather to execute such instruments as may be necessary to grant and convey to the members of the partnership the property so held subject to the resulting trust. *Pomeroy's Specific Performance* (3d Ed.) sec. 191 and notes; *Fry on Specific Performance* (6th Ed.) secs. 245, 1014; *Wilks v. Burns,* 60 Md. 64, 70, 71; *White v. Winchester,* 124 Md. 518, 522-525, 92 A. 1057; *Soho v. Wimbrough,* 145 Md. 498, 509-511, 125 A. 767; *Scott v. Marden,* 153 Md. 1, 12, 13, 137 A. 518.

The ruling of the chancellor sustaining the demurrer was error, since for the reasons stated the allegations of the second amended bill of complaint were sufficient to require an answer by the defendant.

> *Order sustaining demurrer reversed, with costs to the appellant, and cause remanded for further proceedings in conformity with this opinion.*