WILLIAMS ET UX. *v.* DOVELL, INDIVIDUALLY AND AS EXECUTRIX

[No. 133, October Term, 1952.]

*Decided May 14, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*George B. Woelfel* and *Thomas J. Curley,* for appellants.

*William J. McWilliams,* with whom were *McWilliams, Evans & Melvin* and *Robert E. Coughlan, Jr.* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The bill of complaint of Elizabeth E. Dovell, widow of William Randolph Dovell, prayed the Circuit Court for Anne Arundel County to decree that she is the owner of an undivided one-half interest in realty situated in Glen Burnie, which her husband and Leroy H. Williams owned for thirteen years as partners in a garage and service station business. The suit was brought under the Uniform Declaratory Judgments Act, which provides that any person interested under a deed, will, written contract or other writings constituting a contract may have determined any question of construction or validity arising under the instrument, and obtain a declaration of rights, status or other legal relations thereunder. Code 1951, art. 31A, sec. 2.

Dovell and Williams purchased the realty in May, 1937, when it was unimproved, for $1,000. It was conveyed to them as joint tenants. They obtained a mortgage loan from the Standard Oil Company of New Jersey with which to build a garage and filling station on the lot. Payments on the mortgage debt were made with partnership funds.

When the partners applied for an agency of the General Motors Corporation in February, 1946, they executed a written partnership agreement to comply with re-

quirements of that corporation. The wife of each partner also executed the agreement to assent to the disposal of the real estate in the event of the withdrawal or death of either partner.

Dovell died in August, 1950. By his will probated by the Orphans' Court of Anne Arundel County, he left his entire estate to his widow.

The chancellor held that the written agreement terminated the joint tenancy, and passed a decree declaring the title to the property to be vested in Williams and Mrs. Dovell as tenants in common, each having an undivided one-half interest therein. Williams and his wife appealed from that decree.

In the absence of a statute, a partnership cannot hold legal title to realty used for partnership purposes. It is generally recognized that partners hold legal title to real estate as tenants in common and not as joint tenants. This rule is explained in 2 *American Law of Property*, sec. 6.8, as follows: "Since the partnership itself cannot hold the legal title to real estate, such legal title must be held by the partners themselves. Do they hold as joint tenants or as tenants in common? Although the four unities are present, partnership realty cannot be deemed held in joint tenancy since the right of survivorship, which is of the essence in a joint tenancy, is entirely inconsistent with the requirements of partnership law that partnership realty be applied to the extent necessary to pay partnership debts and adjust accounts between the partners and that the surplus be distributed equally on dissolution of the partnership. Legal title is therefore deemed to be in the partners as tenants in common."

The English courts formulated the theory that partnership realty is considered converted into personalty for all purposes and is distributed as personal assets of the firm, and thus the title does not pass to the heirs of the partner, nor does any right of dower attach in favor of the wife of an individual partner. That theory was adopted in England to mitigate the hardship of the

rule that excluded all children except the eldest from inheritance and the rule that exempted real estate passing to heirs from all but the specialty debts of the ancestor. In the United States there are no laws requiring acceptance of such a theory. In this country the law of primogeniture does not prevail, and there is no exemption of real estate from liability for simple contract debts, but real estate left by an ancestor is an asset for the payment of all debts. Thus there is no necessity for an absolute conversion to justify a fiction that would deprive partnership real estate of its descendible quality. The prevailing theory of the American courts is that partnership realty is impressed with a trust and treated as assets to be applied to the payment of partnership debts, but in so far as it is not needed for partnership purposes, no trust exists and it is held by the partners as tenants in common. It is accordingly held by the great weight of authority that where title to real estate is vested in two partners, upon the death of either partner the deceased partner's share in the real estate descends to his heirs, subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected.

In *Darrow v. Calkins* (1897), 154 N. Y. 503, 49 N. E. 61, 64, 48 L. R. A. 299, wherein the Court of Appeals of New York adopted this rule, Chief Judge Andrews said: "The working out of the mutual rights which grew out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion, and then only to the extent required. The American rule commends itself for its simplicity. It makes the legal title subservient in equity to the original trust. It disturbs it no further than is necessary for this purpose. The portion of the land not required for partnership equities retains its character as realty, and it leaves the laws of inheritance and descent to their ordinary operation."

The Maryland Court of Appeals adopted the rule in *Fooks v. Williams* (1913), 120 Md. 436, 442, 443, 87 A. 692, 694. Judge Stockbridge said in that case: "In England there is held to be a complete conversion of such real estate into personal estate for all purposes whatsoever, and it passes to the personal representatives of the partners, and not to their heirs; but in this country by the overwhelming weight of authority when the objects of the conversion have been accomplished a reconversion takes place. When the property has fulfilled all its functions as personal property in respect to the partnership, the partners and the creditors, and is no longer wanted for those purposes, it becomes in the hands of those who hold the legal title, real estate and subject to all incidents as such."

The Uniform Partnership Act, adopted in Maryland in 1916, made a drastic change in the law of partnership. It expressly provides that a partner is co-owner with his partners of specific partnership property holding as a "tenant in partnership." The incidents of tenancy in partnership are such that (1) a partner has an equal right with his partners to possess the property for partnership purposes; (2) a partner's right in the property is not assignable, except in connection with the assignment of the rights of all the partners in the same property; (3) a partner's right in the property is not subject to attachment or execution, except on a claim against the partnership; (4) on the death of a partner his right in the property vests in the surviving partner, who has no right to possess it for any but a partnership purpose; and (5) a partner's right in the property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin. Laws 1916, ch. 175, Code 1951, art. 73A, sec. 25.

Section 8 of the Act provides that any estate in real property may be acquired in the partnership name, and title so acquired can be conveyed only in the partnership name. But the Act does not prevent a partnership from acquiring real estate by having the partners take

the title as cotenants. As the Court said in *Ottaviano v. Lorenzo*, 169 Md. 51, 60, 179 A. 530, where real property is acquired in the course of a partnership with partnership funds, but the conveyance is to the partners as individuals, they hold the property in a resulting trust for the benefit of the partnership. However, where real estate is acquired as partnership property, but is conveyed to the partners by name without reference to the partnership, every right of ownership and disposition is in the partnership, and no interest of the partner in such real estate passes by devise or inheritance or by his individual deed except in the case of a conveyance to a purchaser for value without notice. With that exception, the legal title of individual partners is an empty technicality. The legal title to partnership property cannot be conveyed, devised or inherited as the individual property of any of the partners either as joint tenant or as tenant in common. In so far as the beneficial individual interests of the partners are concerned, it is immaterial whether they are regarded technically as joint tenants or as tenants in common. The partner's interest in the partnership, which is a personal chose in action, is all that he may assign or bequeath, and upon his death intestate that interest passes to his administrator as personal property. 2 *American Law of Property*, sec. 6.9.

As we have quoted from a leading authority on the law of property, title to partnership realty is deemed to be held by the partners as tenants in common, and not as joint tenants. That is the natural presumption and the usual situation in view of the requirement of the law that partnership property shall be applied to the extent necessary to pay partnership debts and to adjust accounts between the partners. However, the proportions in which partners are entitled to the partnership property depend upon their agreement. Consequently we hold that, subject to the rights of creditors, partners may agree that the partnership property shall be converted into the separate property of one of the

partners. A court of equity will give effect to such an. agreement upon dissolution of the partnership whenever such conversion clearly appears to have been the intention of the parties. *Ottaviano v. Lorenzo,* 169 Md. 51, 62, 179 A. 530; *Collier v. Benjes,* 195 Md. 168, 176, 73 A. 2d 21, 24.

In this case the real estate was conveyed to the partners as joint tenants. The partners had the right to hold the property as joint tenants, for it had the four essential characteristics of joint tenancy: unity of interest, unity of title, unity of time, and unity of possession. However, it is plausible that the partners never intended that, in the event of the death of either, his estate would have no share in the property. Both of the men were poor and had very little business experience. One borrowed $500 from his wife, the other borrowed $500 from a sister, in order to purchase the lot on which to build a garage. It is significant that when they purchased another lot two years later, it was deeded to them as tenants in common.

In any event, the partnership agreement, which was executed in 1946, shows conclusively that it was the intention of the partners that if a joint tenancy did exist, it was then terminated. As we pointed out in *Eder v. Rothamel,* 202 Md. 189, 95 A. 2d 860, there are a number of ways in which a joint tenancy may be terminated. One of the ways is by an agreement between the joint tenants to hold as tenants in common. Such an agreement may be inferred from the manner in which the parties deal with the property. *Duncan v. Suhy,* 378 Ill. 104, 37 N. E. 2d 826; 2 *Tiffany, Real Property,* 3d Ed., sec. 425. We also mention that joint tenancies are always regarded with disfavor by the courts. The reason for this is that from early times the courts have looked with favor upon the widow's claim to dower as a humane provision for the support of the widow and her children, and have allowed her claim except when denied by the clearest mandate of the law. *Chew v. Chew,* 1 Md. 163, 171, 172.

Clause 2 of the partnership agreement provides: "The total assets of the partnership are equally owned, a one-half undivided interest belonging to Leroy H. Williams and the other half belonging to William Randolph Dovell."

Clause 8 provides: "Either partner shall be privileged to withdraw from the business upon giving the remaining partner sixty days notice. The withdrawing partner must sell his interest to the remaining partner and is prohibited from selling to anyone else, unless with the written consent of the remaining partner."

Clause 9 provides: "Should the death of both partners be simultaneous, their respective estates shall be entitled to share equally in the partnership assets."

Clause 12 provides: "Upon the death of either partner, the deceased partner's estate shall not have any interest in the management of the business, but the surviving partner shall run the business. Within thirty days of the death of either partner, the matter shall be submitted to appraisal by selecting appraisers, one by the deceased partner's estate and the other by the surviving partner, said two selecting an impartial third, their appraisal being final, excepting that where the appraisal is less than the book value, then the book value shall prevail. The deceased partner's estate must sell to the surviving partner and is prohibited from selling to anyone else. The surviving partner may, if it is agreeable to the deceased partner's estate, purchase the assets of the deceased partner's interest in the business at a private sale within thirty days of the death of the deceased partner."

We particularly observe that the agreement specifically mentions the parcel now in dispute and one other parcel as the real estate owned by the partnership. The agreement makes no distinction between them as to tenancy. We see no reason to believe that the partners intended that, in the event of the death of one of them, his estate would be entitled to a one-half interest in one parcel but would not be entitled to any interest in the other.

Moreover, we see no reason to believe that the partners intended that, while each would be entitled to one-half of all of the assets, both real and personal, in the event of the termination of the partnership during the life of both, yet, in the event of the death of either, the survivor would become the sole owner of the real estate in dispute.

We think it is beyond doubt that it was the intention of the partners that, upon the death of either, the estate of the deceased partner would be entitled to one-half of the value of both the real and personal property. We, therefore, affirm the decree declaring that Williams and Mrs. Dovell each have an undivided one-half interest in the real estate.

*Decree affirmed, with costs.*